385 A.2d 514

Marlene C. JOHNSON, Admrx. of the Estate of Carl K. Johnson, Dec'd, and William P. Johnson, a minor, by Marlene C. Johnson, his parent and natural guardian and Craig Truskey, a minor, by Daniel Truskey

v.

Scott E. STEIN and Whitehall Emergency Squad, Inc.

**Appeal of Martin H. PHILIP.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1976.

Decided April 13, 1978.

42

Albert J. Feldman, Philadelphia, with him F. Paul Laubner, Allentown, for appellant.

Jackson M. Sigmon, Bethlehem, with him William G. Ross, Bethlehem, for appellee, Marlene C. Johnson.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is a fee dispute between two attorneys. Initially, appellant was the plaintiffs' attorney in a tort case, on a contingent fee. In the court below, he sought an equitable charging lien on the fund recovered by the plaintiffs, asking that that percentage of the fund which represented the contingent fee be apportioned between himself and appellee, whom the plaintiffs had subsequently retained, and who in mid-trial had negotiated a settlement.

When the plaintiffs retained appellant, appellee was an associate attorney in appellant's office, and was assigned by

appellant to work on the case. (The trial judge made no finding about how much work appellee did.) In January of 1975, appellant gave appellee notice that his employment with appellant's office would be terminated as of February 28, 1975. By letters dated February 24, 1975, appellee notified the plaintiffs that he was leaving appellant's office, adding: "Since your present fee agreement is with Martin H. Philip [appellant], your case will remain in his office, and my connection with it will terminate as of February 28, 1975, unless you direct otherwise." He then stated his office and home telephone numbers, should the plaintiffs wish more information. By two separate but identical letters dated March 1, 1975, the plaintiffs discharged appellant and requested a statement of expenses incurred on their behalf. Thereafter they were represented by appellee, who went to trial with the case and negotiated the settlement. When appellant filed a "Notice of Attorney's Lien" in the Office of the Prothonotary, the defendants received permission to pay the proceeds of the settlement ($62,336.33) into court. On January 27, 1976, the court entered an order striking the "Notice of Attorney's Lien." This appeal is from that order.

Pending disposition of his appeal, appellant petitioned the lower court for an order of supersedeas staying distribution of the fund. The court refused the petition, and on February 4, 1976, ordered distribution of the fund. Thereupon the fund was disbursed to appellee, who distributed it to the plaintiffs after first paying to himself the percentage of the fund representing the contingent fee, and reimbursing appellant for advanced costs.

1

In *Recht v. Clairton Urban Redevelopment Authority*, 402 Pa. 599, 168 A.2d 134 (1961), the Supreme Court set out the requirements for an attorney's equitable charging lien:

A review of these authorities illustrates that before a charging lien will be recognized and applied, it must

appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

402 Pa. at 608, 168 A.2d at 138–39.

We have no difficulty in finding that requirements (1) and (4) have been met. Appellee argues that the fund is not "in court" but has been disbursed. While this is true, there was a fund in court at the time the lower court made its decision to strike appellant's notice of lien.

With respect to requirement (2), the parties differ on whether the services of appellant "operated substantially or primarily to secure the fund," each party enumerating the services he performed and minimizing the services of the other. We do not undertake to resolve this difference of opinion, nor do we consider requirement (3), for we have concluded that in any event, requirement (5) has not been met.

Requirement (5) focuses attention on the fact that there must be "considerations which necessitate" imposition of a lien if the attorney whose efforts brought about the existence of a fund is to be paid for his services. Thus in *Harris's Appeal,* 323 Pa. 124, 186 A. 92 (1936), the Court imposed a lien at the expense of the owner's mortgagee, who otherwise would have been entitled to the entire recovery:

It would be manifestly unjust to permit the mortgagee to reap all the benefits of the attorney's endeavors and to "get out from under" even the smallest share of the burden which produced the benefits. We will impose on

the fund the payment of the reasonable costs of its creation.

322 Pa. at 135, 186 A. at 97.

[T]he charging lien [depends] upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, *ex aequo et bono,* that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry those fruits were obtained.

*Id.,* 323 Pa. at 130–31, 186 A. at 95.

■    Accordingly, the court will impose a lien where the fund from which the attorney's fee is to come would be depleted by creditors with prior claims, leaving the attorney unpaid and unable to recover against his client. *McKelvy's and Sterrett's Appeals,* 108 Pa. 615 (1885) (insolvent client who tried, by other counsel, to get the fund out of the court's control without paying his attorney); *Jones v. City of Pittsburgh,* 157 Pa.Super. 528, 43 A.2d 554 (1945) (set-off for delinquent taxes in excess of amount of judgment); *Turtle Creek Bank & Trust Co. v. Murdock,* 150 Pa.Super. 277, 28 A.2d 320 (1942) (prior judgment would consume fund).

■    Where considerations of protecting the attorney do not necessitate imposition of a lien, the court will not impose one. Thus in *Recht v. Clairton Urban Redevelopment Auth., supra,* the Court in reversing the lower court's imposition of a lien, noted: "It does not appear that Herman Recht is attempting to defraud counsel nor that he is insolvent. There is no adverse or third-party attempting to appropriate the fund." 402 Pa. at 610, 168 A.2d at 140. Similarly, the Court of Appeals for the Third Circuit, in deciding whether there were such considerations as necessitated imposition of a lien, has said:

Finally, always a significant factor in deciding the equities, there is nothing in the record to indicate that the attorney claimants will be, or were, precluded from press-

ing their claims directly against their clients or the estates thereof.

*United States v. Fidelity Philadelphia Trust Co.,* 459 F.2d 771, 778 (3d Cir. 1972).

■ Here we find no considerations that necessitate imposition of a lien. As regards the plaintiffs, appellant has no claim: the plaintiffs have paid their counsel fee—it was indeed paid into court. As regards appellee, appellant may have a claim; but if he does, there is no urgency to the claim such that a lien is necessary, for there is no suggestion in the record that appellee will not be able to pay appellant if in response to an appropriate action a court so orders.

### 2

■ Implicit in what has just been said is the conclusion that there is an appropriate action by which appellant may have his claim against appellee adjudicated. In this regard we note that the apparent absence of an agreement between the parties does not preclude an action by appellant, for recovery may be sought on a theory of quasi-contract, or contract implied-in-law:

Quasi-contracts, or contracts implied in law, are to be distinguished from express contracts or contracts implied in fact. "[U]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." . . . Quasi-contracts may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention.

*Schott v. Westinghouse Elec. Corp.,* 436 Pa. 279, 290–91, 259 A.2d 443, 449 (1969).

It is well established that a person who has been unjustly enriched at the expense of another must make restitution to the other.

*DeGaspieri v. Valicenti,* 198 Pa.Super. 455, 457, 181 A.2d 862, 864 (1962).

We realize that on the record before us it is not clear whether appellant is entitled, if he is entitled to any recovery, to a percentage of the contingency fee, or only to expenses. However, this lack of clarity would exist were we to impose a lien in appellant's favor: we should then have to ask, How much, if any, money is owed appellant?[1] While a charging lien must be regarded as a measure necessary to ensure that an attorney gets paid, it cannot alter the substantive law on how much the attorney is entitled to be paid.

The lower court in its opinion suggested that appellant also has a remedy against appellee on a theory of tortious interference with contract. We note, however, that since the court's opinion was written, the United States Supreme Court has held in *Bates v. Arizona State Bar,* 429 U.S. 813, 97 S.Ct. 53, 50 L.Ed.2d 73 (1977), that advertisements of the availability of legal services are under certain circumstances protected by the first amendment. Given this decision, the law on tortious interference with contracts, so far as attorneys are concerned, must be considered in transition.

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

1. There are a number of cases that deal with an attorney's remedies as against the client when the client ends the attorney's employment before conclusion of the case. *Lampl v. Latkanich,* 210 Pa.Super. 83, 231 A.2d 890 (1967) (discharged attorney gets quantum meruit.). *See, e. g., Sundheim v. Beaver County Building and Loan Assoc.,* 140 Pa.Super. 529, 14 A.2d 349 (1940) (attorney may be discharged at any time regardless of fee arrangement, but is entitled to quantum meruit); *But see Williams v. Philadelphia,* 208 Pa. 282, 57 A. 578 (1904). (Attorney was hired by city to recover credits for tax overpayments to states. After some credits were recovered, with attorney getting contingency fee as contracted, city refused to press for more credits. Held: "He had therefore an interest in the contract apart from his mere employment as an attorney, and of this he could not be deprived by the city's change of view as to the advisability of further prosecuting its claims." 208 Pa. at 288, 57 A. at 579. How much attorney would have been able to get for the city, or whether such a calculation was too speculative, were questions for jury.)