**Cherry v. Zucker**

C.P. of Delaware County, no. 96-2625.

*Garland D. Cherry Jr.,* pro se plaintiff.
*Gary C. Bender,* for defendant.

BURR, *J.,* January 18, 2002—The plaintiff, Garland D. Cherry Jr., Esquire, appeals from the denial of his post-trial motion in this action to recover compensation for services rendered prior to his dismissal from representing the defendant in an underlying medical malpractice lawsuit.[1]

---

1. The Honorable Clement J. McGovern Jr. was formerly the judge to whom the above-captioned matter was assigned. Judge McGovern, who has since retired, presided at trial, entered the verdict in the case

The plaintiff and the defendant, Edward L. Zucker, entered into a contingency fee agreement on November 21, 1990, whereby defendant employed the plaintiff to represent him in prosecuting a medical malpractice action against John U. Doherty M.D., and Paul Jennings M.D. The alleged negligence of Drs. Doherty and Jennings in diagnosing and treating Mr. Zucker's supraventicular tachycardia (SVT) of the heart, purportedly caused Zucker to pass out at the wheel of his car and become injured in an ensuing automobile accident on January 17, 1989, and thus lose a promising professional basketball career. The agreed upon compensation for plaintiff's services for prosecuting defendant's lawsuit was a third of the gross amount recovered by way of a settlement, or 40 percent of the gross recovery following commencement of a trial. Defendant also agreed to pay for all expenses incurred by plaintiff in preparing the case for trial, "not limited to costs and fees associated with conducting an investigation, filing suit, obtaining records and reports, deposing witnesses, hiring experts, etc." The agreement states that "[t]hese expenses will be initially advanced by Mr. Cherry, but he will be entitled to reimbursement of these expenses in full, separate and in addition to his fee, if and when there is a recovery in our case." The agreement provides that defendant was not obligated to reimburse plaintiff's expenses if there were no recovery in the case. (See contingency fee agreement, trial exhibit P-1.) Plaintiff maintains that his representation of Mr. Zucker actually commenced

---

and contributed to the drafting of this opinion. The undersigned judge entered the order upon which this appeal is based and has completed and filed this opinion.

a year before the agreement was signed, in "September or October of 1989," and continued until the date of a termination letter from Mr. Zucker dated February 21, 1995. (4/23/99 N.T. 86.)

In an amended complaint filed on May 30, 1996, plaintiff pleaded his intention to assert a lien on any proceeds recovered in the malpractice action, and "alternatively, if there is no recovery in the malpractice action, plaintiff still seeks quantum meruit recovery for the reasonable value of his professional services rendered to defendant up to the date of discharge plus expenses of litigation." (Amended complaint, ¶¶29 and 30.) Plaintiff presented a bill at trial for the foregoing expenses in the amount of $9,467.84. (4/23/99 N.T. 82-83, plaintiff's costs and expenses—trial exhibit P-7, see also, defendant's motion for compulsory nonsuit and/or summary judgment.)[2] Plaintiff testified that he has never been reimbursed for the expenses he put forth in the underlying litigation. (4/23/99 N.T. 84-85.) Plaintiff stated that he had never kept any diaries or calendars or billing records or any other written records that would substantiate the amount of time spent on tasks relative to his representation of Mr. Zucker. (4/23/99 N.T. 154.) Plaintiff presented a "chronology" of milestones in the malpractice case, be-

2. Defendant filed a post-trial motion for compulsory nonsuit and/or summary judgment in which he agreed to reimburse the pleaded costs with the exception of payments to New Jersey counsel, Tobin Schmesser, Esquire, in the amount of $2,405; to paralegal, Janet McCrossen, in the amount of $463.50; and paralegal, LaVera Van Atter, in the amount of $507.50. Defendant then stipulated and consented to a judgment entered against him for reimbursement of plaintiff's costs in the amount of $6,091.84. (Defendant's motion for compulsory nonsuit and/or summary judgment, ¶¶16-18.)

ginning with the automobile accident on January 17, 1989, through his termination in February of 1995.

Plaintiff filed the underlying lawsuit, *Zucker v. Doherty,* captioned at number 91-291, in the Delaware County Court of Common Pleas, by writ on January 9, 1991.[3] The case docket reflects plaintiff's filing of a praecipe to withdraw his appearance for the defendant, Mr. Zucker, some four years later, on March 29, 1995. The docket also indicates that Mr. Zucker moved in that matter on June 29, 1995, to compel the plaintiff to produce defendant's case file to successor counsel. The Honorable Maureen Fitzpatrick granted defendant's motion in an amended order issued on July 18, 1995.[4] The medical malpractice action then proceeded to trial in the spring of 1997, before the Honorable R. Barclay

3. The action was also filed in New Jersey state court due to concerns related to obtaining jurisdiction over the defendant doctors. That action was later withdrawn by agreement of the parties, and litigated solely in the Court of Common Pleas of Delaware County, Pennsylvania. (4/23/99 N.T. 37-38, 179-80, trial exhibit P-18.)

4. It is here noted that in paragraph 11 of his concise statement, plaintiff alleges that this court issued that ruling, causing a violation of plaintiff's constitutional rights in permitting Mr. Zucker and his subsequent attorneys to unlawfully take plaintiff's entire work product, and then "refusing to award any compensation whatsoever to plaintiff for his professional services." It is patently clear from the record that the ruling in question was that of another judge entirely, during the course of managing an entirely different case, and that error in its issuance cannot be charged to this court. This court was not requested to revisit the matter of the surrender of plaintiff's file, nor could it have passed upon the order of another trial judge of the same court on an interlocutory matter such as this, had it been called upon to do so. *Kenis v. Perini Corp.,* 452 Pa. Super. 634, 682 A.2d 845 (1996); *Prime Properties Development Corp. v. Binns,* 397 Pa. Super. 492, 580 A.2d 405 (1990); *Reifinger v. Holiday Inns Inc.,* 315 Pa. Super. 147, 461 A.2d 839 (1983).

Surrick, formerly of this court, some two years after plaintiff's withdrawal from representing Mr. Zucker. A jury awarded damages to Mr. Zucker in the amount of $2.7 million on May 27, 1997. The underlying defendant, Dr. Doherty, filed a motion for post-trial relief on May 29, 1997. It was at this juncture that plaintiff filed his action to recover attorney compensation against the attorneys and law firm that successfully prosecuted the medical malpractice action to verdict. That action, captioned *Cherry v. Weiss,* at number 97-7915, was filed in the Delaware County Court of Common Pleas on June 2, 1997.[5]

---

5. Plaintiff's action against successor counsel was dismissed by Judge McGovern on the defendants' motion for summary judgment, on grounds that an action in quantum meruit cannot be maintained by a dismissed attorney against successor counsel. *Cherry v. Weiss,* 118 Del. Co. 117 (2000), *aff'd,* 754 A.2d 13 (Pa. Super. 2000), *app. den.,* 2000 WL 987134 (Pa. 2000). Under the law, such an action must instead be brought against the former client. *Fowkes v. Shoemaker,* 443 Pa. Super. 343, 661 A.2d 877 (1995); *Styer v. Hugo,* 422 Pa. Super. 262, 619 A.2d 347 (1993), *aff'd,* 535 Pa. 610, 637 A.2d 276 (1994). Judge McGovern's order granting that motion for summary judgment was affirmed by the Pennsylvania Superior Court, and the Pennsylvania Supreme Court subsequently declined to review the decision. An additional issue decided adversely to the plaintiff in *Cherry v. Weiss, supra,* was his alleged entitlement to discovery of the work product of subsequent counsel in the underlying medical malpractice action so as to determine therefrom the relative contribution of each attorney to the successful outcome. The Pennsylvania Superior Court noted in footnote 2 on page four of its memorandum opinion filed on February 9, 2000, affirming the trial court's denial thereof, that no Superior Court case has supported an award to discharged counsel based upon a comparison of the relative workload of different lawyers on a case, citing *Hiscott and Robinson v. King,* 426 Pa. Super. 338, 626 A.2d 1235 (1993), *alloc. den.,* 537 Pa. 641, 644 A.2d 163 (1994). That statement of the law remains unchanged, and the issues raised in para-

Judge Surrick denied Dr. Doherty's motion for post-trial relief in the medical malpractice action on December 31, 1997. On January 22, 1998, Judge Surrick molded the jury's award to $1,755,000 to reflect the jury's finding of 35 percent contributory negligence on Mr. Zucker's part, and granted delay damages to Mr. Zucker in the amount of $523,666.78, bringing the total amount of the verdict recovered in the underlying action to $2,278,666.78. Judgment on the molded verdict was entered in the trial court on February 6, 1998. Notice of Dr. Doherty's appeal from denial of his post-trial motions was filed on February 23, 1998, along with an appeal bond in the amount of $1,534,400.14. Judge Surrick filed his opinion on January 25, 1999. The Superior Court's order affirming Judge Surrick's denial of Dr. Doherty's post-trial motion was filed on December 13, 2000, some 14 months following conclusion of trial in the instant case. There was no appeal from that decision.

Trial in the instant action commenced on April 22, 1999, with a request from plaintiff for a new trial listing, thus carrying on a delaying process that began after the first listing of this case for trial on November 7, 1997, when plaintiff asked for the matter to be removed from the list because it had settled. (4/22/99 N.T. 3-4, 28-29.) However, after the parties' notification to the court of their rescission of the settlement agreement, plaintiff's case was called to trial on March 16, 1998. Nevertheless, on that date, after a jury panel was seated, but be-

---

graphs 2, 3 and 7 of plaintiff's concise statement, alleging refusal by the court to permit discovery or allow trial evidence relative to such a comparison are completely lacking in merit.

fore it was sworn, plaintiff requested and was granted another continuance in order for discovery to proceed. The case was subsequently rescheduled for trial on July 27, 1998, but plaintiff again requested a continuance pending completion of the appeal in the underlying case on grounds that there was no fund or "res" before the court from which the fees in dispute could be distributed to the plaintiff. Plaintiff also sought, at this time, consolidation of this action with the above-mentioned case of *Cherry v. Weiss, supra.* That motion was denied and trial was rescheduled for January 4, 1999. Plaintiff then requested that the case be removed from the January list because he had pre-purchased nonrefundable airline tickets for a vacation in Florida from January 12 through January 23, 1999.

Trial was rescheduled for the term beginning February 8, 1999, at which time plaintiff filed a motion seeking clarification of the law of quantum meruit by discharged counsel, asking the court to determine for him whether a discharged attorney seeking quantum meruit compensation may recover a proportionate share of the fund he helped create, or whether he is limited to relief in the form of hourly compensation only. The motion was denied by order dated March 5, 1999, because it was deemed inappropriate for the court to provide plaintiff, a licensed, experienced and practicing attorney, with such a determination, inasmuch as plaintiff was, indeed, quite capable of arriving at such clarification himself following research of the applicable law. Trial was rescheduled for the term beginning April 10, 1999. It is here noted that the wording of the motion for clarification evinces plaintiff's ongoing confusion regarding the

nature of this remedy, the sort of evidence that should be proffered in such a case, and the factors the court may consider in making an award for services rendered by an attorney in an action for quantum meruit. It is also reflective of plaintiff's intent to recover a significant portion of the judgment awarded to Mr. Zucker in the underlying malpractice action, and to be satisfied with nothing less.

Testimony finally began in the case on April 22, 1999. During the first day of trial the plaintiff again insisted that the trial court decide whether he should pursue an action in quantum meruit to recover a portion of the recovery in the medical malpractice action, or pursue an equitable attorney's charging lien claim. (4/22/99 N.T. 3-78; 4/23/99 N.T. 3-6.) Judge McGovern was equally insistent in declining to choose what theory of recovery plaintiff should pursue at trial. Plaintiff ultimately decided to pursue an equitable charging lien claim before the court sitting without a jury. (4/22/99 N.T. 27-41, 51-70; 4/23/99 N.T. 3-6.) Plaintiff then presented his own lengthy testimony regarding the services he performed and the expenses he incurred while preparing the underlying medical malpractice case for trial on the theory that the failure of Mr. Zucker's treating physicians to diagnose and treat his SVT caused him to pass out while driving and crash his vehicle, incurring injuries that put an end to an incipient professional basketball career.

Plaintiff testified that his services prior to trial of Mr. Zucker's case included finding expert witnesses who would provide reports and testimony supportive of this theory of recovery, and that this had been difficult to achieve. (4/23/99 N.T. 7-75, 172-75, trial exhibits P-11

to P-13.) Plaintiff testified that the largest portion of his expenses were incurred in initially bringing suit in both Pennsylvania and New Jersey courts so as to obtain personal jurisdiction over the underlying defendants, and in tracking down and interviewing the numerous trial and expert witnesses he planned to present at trial. (4/23/99 N.T. 7-75, 176-77; trial exhibit P-17.) Plaintiff said that none of the foregoing expenses had ever been reimbursed. (4/23/99 N.T. 84-85.) Plaintiff proffered a table listing those expenses, totaling $9,467.84. (Trial exhibit P-7.) Plaintiff said that it was impossible for him to ascertain the number of hours he had spent in preparing the malpractice case for trial. (4/23/99 N.T. 163.)

Plaintiff testified to attending a number of pretrial conferences with Judge Fitzpatrick with the aim of moving the case to trial, and to having obtained numerous continuances from her and Judge (now President Judge) Clouse of this court beginning in November of 1993, in order to complete discovery, particularly with respect to the potential positive effect of a successful heart ablation procedure[6] on Mr. Zucker's subsequent athletic abilities, *i.e.,* the damages portion of Mr. Zucker's case. (4/23/99 N.T. 66-79, 127-28, 139-41, trial exhibits D-2, D-3, D-4, D-7.) Plaintiff maintained that another reason for delay was his desire to have Mr. Zucker "ablated" so that Zucker could feel better about himself and that he could have a credible damages claim. (4/23/99 N.T. 133.) The credibility issue arose from plaintiff's feeling that

---

6. Ablation is defined in Stedman's Medical Dictionary, 25th Ed. (1990), as surgical removal of a noxious or offending substance, in this instance tissue, the presence of which caused Mr. Zucker's heart to beat irregularly.

he could not present a credible claim to the jury in April of 1994 that Zucker had SVT and was in danger of sudden death from playing basketball without the corroborating testimony of a medical expert, but that the expert already retained held a contrary opinion. (4/23/99 N.T. 134-36.) Plaintiff contended that subsequent to Zucker's having the ablation surgery in August of 1994, he had difficulty obtaining from Zucker the names of sports witnesses who would attest that the injuries suffered put an end to his European basketball career, because Zucker had become "incommunicado" with him and unresponsive to requests for authorizations to obtain medical records and for the names of sport witnesses. (4/23/99 N.T. 70, 77-78, 185-86; trial exhibits D-8 and D-9.) Plaintiff testified that, in his view, the case was not ready for trial until he had received a supplemental expert report in February of 1995 supporting his theory of the case. (4/23/99 N.T. 160, 184, trial exhibits P-16 and P-20.) Plaintiff blames the delay on Mr. Zucker's reluctance to obtain an appointment and be examined by the expert. (4/23/99 N.T. 162-65.) Plaintiff said that after he had finally obtained the names of the sports witnesses from Mr. Zucker and while he was in the process of contacting them and providing their names and potential testimony to the defense, he received the letter of termination from Mr. Zucker also in February of 1995. (4/23/99 N.T. 70; trial exhibit P-6.)

Plaintiff indicated that he had not attended the trial nor otherwise assisted with the prosecution of the underlying medical malpractice action after he was terminated from representing Mr. Zucker. Plaintiff said that he could remember having malpractice cases prior to his

retention by Mr. Zucker, and subsequent to his termination, but could give specific information about only one of them. (4/23/99 N.T. 96-99.) Plaintiff testified that there was never an issue between him and Mr. Zucker arising from the payment for services of New Jersey counsel, Mr. Schmesser, and New Jersey paralegals, Ms. Van Atter and Ms. McCrossen. (4/23/99 N.T. 108-15.)

Defendant, Mr. Zucker, testified that plaintiff was the first and only attorney he had spoken with before hiring plaintiff to represent him in the malpractice case, and that he had done so on the recommendation of a college friend. (4/23/99 N.T. 196-99.) Mr. Zucker indicated that he was told by the plaintiff early on that he was not licensed to practice law in the state of New Jersey. (4/23/99 N.T. 200-201.) The defendant said that he did remember working with the plaintiff to find medical witnesses who would review the defendant's chart and put together the malpractice case before the two-year statute of limitations ended. (4/23/99 N.T. 201-12.) Mr. Zucker indicated that he also recalled the necessity of filing a back-up action in New Jersey state court, and that there were expenses involved in that effort, but said that plaintiff had never discussed them with him. (4/23/99 N.T. 212-13, 216-17.) The defendant said he recalled the difficulties involved in finding an expert medical witness who would support his theory of the case that the failure to diagnose SVT and medicate him properly caused the car accident and ended his basketball career. (4/23/99 N.T. 220-23, 231-32, 235.) The defendant also stated that he and the plaintiff sometimes went for months without speaking to one another. (4/23/99 N.T. 226.) The defendant said that he had been reluctant to undergo the ablation proce-

dure advocated by the plaintiff because he was competitive athletically when taking only medication, and the injuries suffered in the accident were merely orthopedic in nature. (4/23/99 N.T. 229.)

The defendant testified that he had expressed some concerns to the plaintiff about the delay after the case had been "pushed back" a few times, and because plaintiff seemed reluctant to push the issue of the loss of his basketball career, and thus appeared to be undermining the amount of damages available in the case. (4/23/99 N.T. 238-40.) The defendant testified that he had concerns about plaintiff's preparedness to go forward, even after an expert was retained in the case, and that he had expressed these to the plaintiff on several occasions, although not in writing. (4/23/99 N.T. 242-43.) The defendant said that his decision to undergo the ablation procedure was a personal decision made with his wife, and that it had nothing to do with the case. (4/23/99 N.T. 246.) The defendant terminated plaintiff's services by letter dated February 21, 1995, and retained new counsel who pursued the matter through trial and who achieved the multi-million dollar verdict in 1997 utilizing the expert obtained through plaintiff's and the defendant's efforts. (4/23/99 N.T. 79, 87, 257; trial exhibit P-6.) Plaintiff's suit against new counsel was initiated on June 2, 1997, just after entry of the verdict, and alleged malicious interference with contractual relations and defamation, with a claim for quantum meruit damages assessed against the fee to be generated by successful prosecution of the medical malpractice action. Judge McGovern's dismissal of that suit on the defendants' motion for summary judgment, as has been hereinabove noted, was upheld on appeal.

Prior to the adjournment of testimony on April 23, 1999, plaintiff complained that, since the court had not granted a trial continuance as plaintiff had expected, he was unable to present further testimony or evidence at that time, and asked if he could do so the following Monday. (4/23/99 N.T. 261.) The court explained that a jury trial in another case had been scheduled for that date. (4/23/99 N.T. 262.) Plaintiff then stated his intention to call as witnesses the New Jersey attorney, a Mr. Fletcher, whom he had employed prior to his dismissal from representing defendant in the medical malpractice action, as well as the two attorneys who had represented the defendants in the malpractice case, but that he had been unable to secure their attendance by way of telephone calls made that morning and on the preceding day. (4/23/99 N.T. 262-64.) Counsel for the defendant stated, without objection from the plaintiff, that he was having difficulty deciding which witnesses to call, inasmuch as plaintiff had "changed his whole theory with respect to this case," but that he was also considering the presentation of the attorneys who had represented Mr. Zucker in the malpractice action. (4/23/99 N.T. 267.) Plaintiff then said he planned to review some of the underlying deposition transcripts to determine whether he would include them as part of his case. (4/23/99 N.T. 267-68.) The proceedings then adjourned with the court's announcement that counsel would be notified when trial would reconvene.

The court received, on April 26, 1999, a letter from plaintiff wherein he requested the transcription of robing room proceedings during which plaintiff again reiterated his request that the trial judge provide the forego-

ing "clarification of the law of quantum meruit," with that request once again being denied for the reason hereinabove stated. Plaintiff went on in the letter to say he intended to call as witnesses counsel for the defendant, Dr. Jennings, in the medical malpractice action, the defendant Mr. Zucker's attorney in the malpractice suit, and to present the deposition testimony of defendant's attorney in the malpractice action, and/or other members of that attorney's law firm. Plaintiff expressed concern with the court's desire to move the case forward despite the absence of a "res" allegedly required for the imposition of an attorney's charging lien, because plaintiff had the impression that the focus of the proceeding was now to make an equitable division of the recovery in the malpractice case. Plaintiff expressed his concern with rulings excluding evidence of subsequent counsel's use of plaintiff's work product, because, in plaintiff's view, equitable division of the proceeds of the underlying verdict would be impossible without a detailed examination of the efforts expended by plaintiff and replacement counsel. The trial judge responded by letter that it declined to proceed with litigation of this case through the mail. Following the granting of a continuance requested by counsel for the defendant of the relisted trial date of July 19, 1999, and plaintiff's request for a date certain in order for him to have less difficulty in coordinating the testimony of his projected witnesses, trial was specially listed to resume on October 7, 1999.[7]

---

7. It is here noted that plaintiff, in an answer filed on February 23, 1999, to defendant's motion to preclude expert testimony, said he would call one Marvin Ellin, Esquire, as his expert witness at trial. Defendant's motion was denied. However, Mr. Ellin's name was never subsequently

During the month of August 1999, plaintiff informed the court that he was having difficulty arranging for the appearance of his witnesses at trial, and Mr. John Luchsinger, counsel for the Hospital of the University of Pennsylvania, Dr. Doherty's employer, informed the court directly that HUP would not waive its attorney-client privilege in order for Mr. Luchsinger to testify for the plaintiff in this action. Moreover, during the interim between the conclusion of testimony on April 23, 1999, and resumption of trial on October 7, 1999, plaintiff litigated a petition filed with the Pennsylvania Superior Court to stay the instant action pending resolution of the appeal in the underlying malpractice case and of plaintiff's appeal of this court's granting of summary judgment to successor counsel in plaintiff's action to recover a portion of the recovery in the malpractice case from them. Plaintiff complained in the stay petition that, if the present action were not stayed, he would be forced to fully litigate the controversy in this court as an equitable charging lien, and the case against successor counsel would become moot. (Plaintiff's petition for stay of lower court proceedings, filed in *Cherry v. Weiss,* no. 97-7915, ¶6.) The Superior Court filed an order dated October 5, 1999, denying the petition for stay, citing the case of *Pa. Public Utility Commission v. Process Gas Consumers Group,* 502 Pa. 545, 467 A.2d 805 (1983) (grant of stay pending appeal must be warranted by a strong showing that petitioner is likely to prevail on the

submitted to the court as a potential trial witness, nor was he ever called to testify for the plaintiff. Therefore, plaintiff's claim that he was unable to present a trial expert in this action is, indeed, mystifying.

merits; that without requested relief he will suffer irreparable injury, and that issuance of stay will not substantially harm other interested parties in the proceedings and the public interest).

Plaintiff also sought certification from the trial judge that the court's disinclination to decide for plaintiff whether a quantum meruit claim permits a percentage of the recovery in an underlying suit, or is limited to hourly compensation only, presented a controlling issue of law for purposes of an interlocutory appeal. Plaintiff asserted in support thereof that the court's refusal to issue a ruling on the issue (which would have been, by necessary implication, an impermissible "advisory opinion" as to what legal strategy plaintiff ought to pursue in court), was tantamount to a ruling "that discharged counsel is limited to hourly compensation and that in order to assert an interest in the fund recovered by the client, discharged counsel must waive his right to a jury trial and proceed in equity for imposition of an attorney's charging lien." Judge McGovern denied plaintiff's request for certification of controlling issue of law by order filed on October 5, 1999, or two days before the recommencement of trial.

Despite the trial court's announcement at the outset that ample notice had been given to all counsel that the matter was to be concluded on that date, the proceedings of October 7, 1999, began with plaintiff's request to read an oral motion for continuance into the record. (10/7/99 N.T. 4.) Plaintiff then asserted as grounds for the request that there was still no "res" or fund subject to "equitable distribution" to the plaintiff, or against which plaintiff could litigate an equitable charging lien claim, thus di-

vesting the court of jurisdiction to act in the matter. (10/7/99 N.T. 3-5.) Plaintiff sought an indefinite continuance pending disposition of the appeal in the malpractice action, in order that the witnesses he had long been promising to present on October 7 might instead appear when the threat of a possible retrial in the malpractice case no longer existed. (10/7/99 N.T. 5-7.) Plaintiff stated at this time, that "given the posture this case is presently in and given the attitude of the court, this matter will be on appeal very shortly" and that he desired to make a record for the appeal. (10/7/99 N.T. 7.)

Plaintiff argued in support of his motion that in adjudicating an attorney's charging lien, the court was required to conduct "a thorough and all-inclusive investigation into whose efforts and whose work product is responsible for the creation of the fund that is before the court for distribution," citing to *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968), and *Recht v. Clairton Urban Redevelopment Authority,* 402 Pa. 599, 168 A.2d 134 (1961). (10/7/99 N.T. 5, 36.) However, it is necessary to point out here that both of the cited cases were decided much earlier than the Superior Court's determination in *Cherry v. Weiss, supra,* relying upon *Hiscott and Robinson v. King,* 426 Pa. Super. 338, 626 A.2d 1235 (1993), *alloc. den.,* 537 Pa. 641, 644 A.2d 163 (1994), that no comparison of the relative contribution of each attorney to the successful outcome of an underlying lawsuit is necessary to the determination of the amount to be recovered by an attorney seeking compensation for his services.

It is also here noted, with all due respect to the plaintiff, that *LaRocca Estate, supra,* was not an action by

discharged counsel, but was brought by original counsel for fees earned in the creation of a trust for their client, allegedly by dint of their own efforts. There the court determined that the attorneys suing for payment for their work did not create the fund from which they were seeking compensation, but merely protected it, and suggested that an appeal for the purpose of obtaining a higher award than was given by the court below was misadvised. *LaRocca Estate, supra,* 431 Pa. at 547, 246 A.2d at 339. *LaRocca* reiterated the "well entrenched rule of law" that the responsibility for determining the amount of an attorney's fee, a sometimes delicate and at times difficult question, "rests primarily with the auditing judge," whose decision will be changed only when there is a clearly shown abuse of discretion. *LaRocca Estate, supra,* 431 Pa. at 548, 246 A.2d at 339. The court also recited the time honored factors to be considered by Pennsylvania courts in determining the fee or compensation payable to an attorney: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the professional skill and standing of the attorney in his profession; the results he was able to obtain; and the ability of the client to pay a reasonable fee for the services rendered. *LaRocca Estate, supra,* 431 Pa. at 546, 246 A.2d at 339. The *LaRocca* court also noted that "a larger fee than usual is likewise frequently awarded when an attorney 'creates' a fund." *LaRocca Estate, supra,* 431 Pa. at 547, 246 A.2d at 339. Plaintiff averred that if he were unable to present the foregoing witnesses, the matters set forth in *LaRocca* could not be inquired into. (10/

7/99 N.T. 10.) Plaintiff's request for yet another continuance was denied.

Plaintiff's next creative tactic was to contend that since there was no "res" or fund before the court against which a charging lien could apply, that he should be allowed to withdraw this case without prejudice to his being able to refile it after the appeal in the malpractice action had been resolved. (10/7/99 N.T. 17.) The defense retorted that it was not going to waive any statute of limitations issues if such were allowed. (10/7/99 N.T. 18.) Plaintiff offered no response when the court suggested that it was apparently plaintiff's view that the statute of limitations would not begin to run until a "res" came into existence. (10/7/99 N.T. 20.) Plaintiff then presented the testimony of one of the malpractice defense attorneys who stated that he was unable to testify in this action until the appeal in the malpractice case was concluded because his client, the Hospital of the University of Pennsylvania, would not waive the attorney-client privilege. (10/7/99 N.T. 22-26.) During elicitation of this witness' testimony, plaintiff admitted to the court that the witness might also be asked to give expert testimony on plaintiff's behalf at a later date. (10/7/99 N.T. 26.)

Plaintiff next asked the court for a day in which to rethink his request to withdraw this action without prejudice. (10/7/99 N.T. 28.) Judge McGovern granted the request with the caveat that, if the action were not withdrawn, there would be no other hearing, and advised counsel that any witness testimony to be proffered should be submitted in the form of depositions. (10/7/99 N.T. 29.) When plaintiff expressed concern with the timing of the submissions, vis-à-vis the conclusion of the mal-

practice appeal, the court informed counsel that they would be given up to three weeks to submit the depositions. Plaintiff argued that evidence he intended to present was necessary in order for the court to determine "who did what before and during trial and whose efforts were responsible for the creation of the fund that is to be equitably divided." (10/7/99 N.T. 36.) Plaintiff sought the admission of letters expressing successor counsel's opinion that plaintiff should be sued for malpractice for electing to bring suit in Delaware County instead of Philadelphia County, Pennsylvania. (10/7/99 N.T. 42.) Plaintiff then submitted his pretrial memoranda in the medical malpractice case, and requested that the name of the author of the letters be added to the list of witness depositions he intended to present. (10/7/99 N.T. 44-45.) Plaintiff again insisted that the court was obligated to examine the pretrial conduct of attorneys from both sides to determine whose efforts were responsible for the creation of the fund. (10/7/99 N.T. 39-40.) The court gave counsel four weeks to supplement the record as requested and to present any memoranda of law. (10/7/99 N.T. 49-50.)

Despite his assertion only the day before that four weeks would be a sufficient time to complete the depositions of witnesses he intended to present in this action, plaintiff filed, on October 8, 1999, a motion for voluntary nonsuit of claim for attorney's charging lien and for leave to reinstate charging lien after fund is available for distribution. Plaintiff alleged in this motion that the trial court had impermissibly forced him to elect between a charging lien claim and a quantum meruit action, and had refused to rule upon whether plaintiff could obtain a percentage of the verdict in the malpractice action, or

whether he was limited to hourly compensation, asserting that the court's pretrial rulings suggested the latter. Plaintiff alleged that, under the circumstances, he had been impermissibly forced to waive a jury trial and proceed in equity on a claim for an attorney's charging lien. Plaintiff insisted that he had also been forced to try the case without witnesses because the witnesses he wished to call would be unable to testify until the appellate process in the malpractice case was concluded. Plaintiff requested a voluntary nonsuit of his charging lien case without prejudice to his ability to reinstate it after a fund became available for distribution in the malpractice action. Plaintiff indicated at the same time that he was not seeking a voluntary nonsuit of his quantum meruit cause of action. Judge McGovern denied both this motion and plaintiff's "oral" motion for continuance by order filed on November 30, 1999.

Thereafter, the defendant filed, on December 23, 1999, a motion for compulsory nonsuit and/or summary judgment, contending therein that plaintiff had withdrawn his quantum meruit claim "in law" on April 22, 1999, the day that trial in the within action had commenced, and that plaintiff had utterly failed subsequently to produce evidence supporting a quantum meruit theory of recovery. Defendant contended that, because plaintiff had not yet produced the depositions he said he would in the four weeks directed by the court, plaintiff's case was now concluded, and that judgment in defendant's favor was now called for. Defendant did concede, as hereinabove noted, that, on the evidence presented, judgment in plaintiff's favor would be appropriate as to costs incurred in prosecuting the malpractice suit in the amount of $6,091.84.

Plaintiff provided the court, by letter dated October 23, 2000, with a courtesy copy of a "complaint in equity," captioned at number 00-10010, asserting a second charging lien action against the defendant, the Pennsylvania Medical Professional Liability Catastrophic Loss Fund, and successor counsel, for a percentage of the proceeds of defendant's malpractice case, and seeking a preliminary injunction ordering that those proceeds be paid into court. Plaintiff's appeal of Judge Clouse's order denying the injunction on grounds that plaintiff was unlikely to prevail upon the merits of his claim because this court had already found that plaintiff could not assert a charging lien, was withdrawn on plaintiff's praecipe filed on April 25, 2001.

Plaintiff filed in this action, on February 2, 2000, a motion for reconsideration of the court's ruling precluding evidence of the conduct of the underlying malpractice trial. Plaintiff alleged in that motion that Judge McGovern had erroneously precluded him from presenting evidence regarding how his work product had been used by successor counsel in the malpractice trial to win a jury award of $2.7 million dollars. The preclusion was contended to have occurred when the court disallowed plaintiff from questioning the defendant regarding the manner in which successor counsel had conducted the trial in the malpractice action. Plaintiff averred that the purpose of this line of questioning was to establish that the verdict was largely due to plaintiff's extensive pretrial preparation and strategy which successor counsel reportedly utilized and followed totally in their conduct of trial, and that preclusion thereof amounted to manifest injustice. These contentions completely ignore the

law of this Commonwealth that an award of compensation to discharged counsel need not be based upon a comparison of the relative contributions of the different attorneys who performed work on a case. *Cherry v. Weiss, supra; Hiscott and Robinson v. King, supra.*

The trial court entered the following verdict in favor of the plaintiff approximately a month after the submission of the foregoing motion for reconsideration of the alleged evidentiary ruling:

"And Now, February 29, 2000, following a bench trial beginning April 22, 1999, continuing April 23, 1999, and October 7, 1999; and further the plaintiff having been afforded four weeks within which to take depositions of various witnesses; and, further, the plaintiff having voluntarily withdrawn any action in quantum meruit[, the] court in light of the record in this matter the exhibits submitted together with the memoranda hereby enters the verdict in favor of the plaintiff and against the defendant in the amount of $9,467.84."

Plaintiff's timely filed motion for post-trial relief having been denied, the plaintiff presented the following concise statement of matters complained of on appeal:

"(1) The trial court lacked jurisdiction to adjudicate an attorney's charging lien in the absence of a final recovery in the underlying malpractice action.

"(2) The trial court refused to conduct or permit inquiry into whose efforts (plaintiff's v. trial counsel's) were responsible for defendant's success in the underlying action.

"(3) The trial court refused to permit plaintiff to conduct pretrial discovery needed to determine the relative

contribution of each attorney to the success of the underlying action, including its refusal to permit plaintiff to take defendant's deposition or inspect trial counsel's file. As a result, plaintiff was unable to prepare for trial including obtaining expert testimony relative to the value of his services.

"(4) The trial court refused to rule on a controlling question of law before trial, *i.e.,* whether Pennsylvania law limits quantum meruit recovery to hourly compensation. As a result, plaintiff was unable to prepare for trial as he was without reasonable notice of what to prove.

"(5) The trial court ruled by implication that a discharged attorney seeking quantum meruit recovery is limited to hourly compensation.

"(6) The trial court, after refusing to rule on a controlling question of law and before there was a final recovery in the underlying action, forced plaintiff to elect between a quantum meruit action and an attorney's charging lien.

"(7) The trial court ruled that events occurring after plaintiff's discharge, including trial counsel's use of plaintiff's witnesses and work product at the trial of the underlying action, were irrelevant and inadmissible in a charging lien action.

"(8) The trial court refused to continue the trial, even after plaintiff's witness, John Luchsinger, Esquire (defense counsel in the underlying action), asserted the attorney-client privilege pending appeal of the underlying action.

"(9) The trial court misconstrued the nature of an attorney's charging lien by ruling, expressly and/or by

implication, that a charging lien action is a garnishment proceeding in which a fund or "res" is relevant only for purposes of execution.

"(10) The trial court refused to grant plaintiff's motion for a voluntary nonsuit with leave to reinstate the action after there was a final recovery in the underlying action.

"(11) The Delaware County Court authorized, committed and caused an 'unlawful taking' of plaintiff's property in violation of due process and state/federal constitutional rights by ordering plaintiff to surrender his entire work product to defendant's trial counsel, permitting its beneficial use by defendant and his counsel in the underlying action, and then refusing to award any compensation whatsoever to plaintiff for his professional services." (Plaintiff's concise statement of matters complained of on appeal, pp. 1-2.)

## 1. EVIDENTIARY AND DISCOVERY MATTERS

Previous discussion has shown that a number of plaintiff's evidentiary issues must be deemed completely lacking in merit for purposes of this appeal. The first of these is the contention in paragraph two of the concise statement regarding refusal of the trial court to allow inquiry into whose efforts were responsible for defendant's success in the medical malpractice action. The Pennsylvania Superior Court has ruled in one of plaintiff's own lawsuits that it is not necessary for a court deciding a claim for attorney fees to make such a comparison. *Cherry v. Weiss, supra,* citing to *Hiscott and Robinson v. King, supra.* Plaintiff's recalcitrant refusal to accept these

rulings simply cannot make the contrary a reality. Moreover, the trial court cannot be faulted for limiting plaintiff's attempt to elicit testimony of this nature from the defendant, because Mr. Zucker, who is not an attorney himself, was neither qualified to evaluate those efforts, nor to testify on such a matter of law. (4/23/99 N.T. 259.) Finally, there was no prejudice to plaintiff from the preclusion because he had submitted lengthy testimony of his own regarding his efforts to secure the testimony of the expert who, the defendant testified, without objection, was the key witness in the malpractice trial. (4/23/99 N.T. 257.)

The second discovery issue is set forth in paragraph three of the concise statement, wherein plaintiff alleges that "the trial court refused to permit plaintiff to conduct pretrial discovery needed to determine the relative contribution of each attorney to the success of the underlying action, including its refusal to permit plaintiff to take defendant's deposition or inspect trial counsel's file." Plaintiff contends that, "[a]s a result, plaintiff was unable to prepare for trial including obtaining expert testimony relative to the value of his services." However, there is absolutely no indication in the record that the trial court refused or disallowed any discovery of that sort in this action, and indeed, there is every indication that plaintiff was never limited in the obtaining of deposition testimony of successor counsel for submission to the court. No protective order was issued in that regard on motion of the defendant, and the court issued none on its own. It is also clear that whatever depositions, if any, that plaintiff obtained from successor counsel, were never presented to the court, nor made part of the record, as

was plaintiff's stated intention at the conclusion of trial. Plaintiff's neglect in preparing and presenting his evidence cannot be laid at the doorstep of the court.

The ruling against obtaining discovery of successor counsel's work product and defendant's client file, complained of in paragraph seven of the concise statement, was decided by the court in the case of *Cherry v. Weiss, supra,* and was upheld on appeal for reasons previously set forth in this opinion. Finally, the record clearly adduces that defendant's motion to preclude plaintiff's expert from testifying in this case was denied, but that plaintiff never proffered the expert's testimony during any of the three days of trial, nor at any time thereafter. Therefore, plaintiff's claim of inability to obtain or prepare an expert smacks of disingenuity. It is likewise clear from the record that plaintiff was ordered by the trial judge in his malpractice case, and not by Judge McGovern, to turn over his case file to successor counsel. Therefore, Judge McGovern cannot be charged with an "unlawful taking" of plaintiff's property as set forth in paragraph 11 of plaintiff's concise statement of matters complained of on appeal.

The law is well-settled that the decision to admit or exclude evidence rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. The test to be applied in determining the admissibility of such evidence involves weighing any prejudicial nature of evidence against its relevance and essential evidentiary value. *Concorde Investments Inc. v. Gallagher,* 345 Pa. Super. 49, 56, 497 A.2d 637, 641 (1985); *Walasavage v. Marinelli,* 334 Pa. Super. 396, 483 A.2d 509 (1984). The court may exclude evidence that

is irrelevant, confusing, misleading, cumulative or prejudicial. *Keough v. Republic Fuel and Burner Co. Inc.,* 382 Pa. 593, 116 A.2d 671 (1955); *Yost v. Union R. Co.,* 380 Pa. Super. 236, 551 A.2d 317 (1988). It is respectfully submitted, for all of the foregoing reasons, that the trial judge's rulings of record were not in error, and that those without support in the record were simply not made.

## 2. PLAINTIFF'S ACTION FOR FEES

### a. *The Charging Lien Claim*

Plaintiff contends in paragraph one of the concise statement that the trial court lacked jurisdiction to adjudicate an attorney's charging lien in the absence of a final recovery in the underlying malpractice action. This mischaracterizes the role of the court and ignores the responsibility of plaintiff to show first that there is a fund in court by dint of his own efforts, and secondly that he is entitled to a portion thereof. It is the law of this Commonwealth that, even if it can be said with relative certainty that there will be a fund in court in the future, the court must have sufficient evidence to determine whether it came about due to the services of the attorney. *Carb v. Allen,* 12 D.&C.4th 630 (1991). It is also true that an attorney cannot realize a charging lien where there is no fund in court. It is undisputed that there was no fund in court or otherwise available during the course of this litigation, nor is there sufficient evidence that any fund that might come into the court was procured substantially by and through the services of the plaintiff who did no work in the case for some two years prior to the verdict. Never-

theless, reviewing the equitable principles involved in determining the appropriateness of a charging lien adduces that such a lien should not be granted to a discharged attorney where successor counsel concluded the case and where an action against the client in quantum meruit may lie, as here. *In re Callahan Settlement Proceeds,* 6 D.&C.4th 637 (1989).

An attorney is entitled to a charging lien if "(1) . . . there is a fund in court or otherwise applicable for distribution on equitable principles, (2) . . . the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) . . . it was agreed that counsel look to the fund rather than the client for his compensation, (4) . . . the lien claimed is limited to costs, fees, or other disbursements incurred in the litigation by which the fund was raised, and (5) . . . there are equitable considerations which necessitate the recognition and application of the charging lien." *Recht v. Clairton Urban Redevelopment Authority,* 402 Pa. 599, 608, 168 A.2d 134, 139 (1961).

Applying these criteria to the facts in the instant case, plaintiff would not be entitled to a charging lien. In *Johnson v. Stein,* 254 Pa. Super. 41, 385 A.2d 514 (1978), a fee dispute arose between two attorneys, one of whom had been previously employed by the same law firm. The plaintiff attorney had represented the plaintiffs in a tort case on a contingent fee basis. At the time he began his representation, he was an associate in the defendant's firm and had been assigned to work on the case. Prior to settlement, the plaintiff was discharged, but the case remained in defendant's office. Thereafter, the defendant negotiated a settlement. The plaintiff filed a notice of

attorney's lien, and the defendant paid the proceeds of the settlement into court. The trial court entered an order striking plaintiff's attorney's lien and plaintiff appealed. The Superior Court upheld the trial court's decision. After citing the requirements for a charging lien as set forth in *Recht, supra,* it found that the fifth requirement had not been met. The court explained that:

"Requirement (5) focuses attention on the fact that there must be 'considerations which necessitate' imposition of a lien if the attorney whose efforts brought about the existence of a fund is to be paid for his services." *Johnson* at 44, 385 A.2d at 516.

The Superior Court in *Johnson* went on to explain that the imposition of a charging lien is based on the court's interest in protecting attorneys as officers of the court and making sure that a client does not reap the fruits of the settlement without compensating the attorney without whose effort the settlement would not have been obtained. *Id.* Therefore, the court continued, a charging lien will be imposed "where the fund from which the attorney's fee is to come would be depleted by creditors with prior claims, leaving the attorney unpaid and unable to recover against his client. . . . Where considerations of protecting the attorney do not necessitate imposition of a lien, the court will not impose one." *Id.* at 45, 385 A.2d at 516. The court cited several factors to be used in determining whether conditions which necessitate imposition of a lien exist. They are, whether a client is attempting to defraud counsel; whether the client is insolvent; whether an adverse or third party is attempting to appropriate the fund; and, citing *U.S. v. Fidelity Philadelphia Trust Company,* 459 F.2d 771, 778 (3d Cir.

1972), whether there is anything in the record to indicate that the attorney is or will be precluded from pressing his claim directly against his client. *Johnson* at 45-46, 385 A.2d at 516. Here, the plaintiff was never foreclosed from and, indeed, pursued a claim of quantum meruit against his client, and a charging lien should therefore not be imposed.

Plaintiff relies upon the case of *Recht v. Clairton Urban Redevelopment Authority, supra,* for the proposition that equitable principles set forth therein mandated a charging lien on the malpractice verdict be granted in his favor. However, the court there found that the attorney who took no part in the preparation of an appeal and trial de novo in an eminent domain action was not entitled to assert a charging lien against the jury verdict obtained by new counsel in the de novo trial. Thus, the principles set forth in *Recht* would not support plaintiff's assertion of a charging lien against a verdict obtained by successor counsel. Therefore, it is respectfully submitted, that under the circumstances presented here, plaintiff would not have been entitled to assert a charging lien against the underlying verdict in any event.

Plaintiff contends in paragraph six of his concise statement that "the trial court, after refusing to rule on a controlling question of law and before there was a final recovery in the underlying action, forced plaintiff to elect between a quantum meruit action and an attorney's charging lien." As has been hereinabove noted, the trial judge was not obligated to provide plaintiff with the answer to a question he could determine for himself. Neither did the court force plaintiff to proceed on any cause of ac-

tion. The decision to litigate and try the case as he did was solely that of the plaintiff.

Plaintiff contends in paragraph nine of his concise statement that, "the trial court misconstrued the nature of an attorney's charging lien by ruling, expressly and/or by implication, that a charging lien action is a garnishment proceeding in which a fund or 'res' is relevant only for purposes of execution. There is no such ruling of record in fact, and/or by implication.

For all of the foregoing reasons, plaintiff's contentions of error or abuse of discretion by the trial court with regard to the claim of equitable charging lien are unfounded in fact and in the law. Because plaintiff possessed and was litigating a claim in quantum meruit against his former client, he would not have been allowed to assert a charging lien against the verdict in the underlying suit. Whether or not there was a fund or "res" in court, and whether or not the action was properly before the court, would have availed the plaintiff nothing.

### b. *Quantum Meruit*

It is abundantly clear from all the facts and circumstances of this case that plaintiff filed suit too early, and that, had he waited a longer period of time, he would not have had to wage the serpentine battle he's waged to prevent the extinguishment of the light on his claim of eligibility for a portion of the underlying recovery. Plaintiff's services were terminated by the defendant by letter dated in February of 1995. The verdict in the malpractice case was delivered in May of 1997. Plaintiff initiated the instant action only a month later, when he could

have waited until February of 1999 to initiate suit and continue to be engaged in litigation thereof when the jury's verdict was upheld by the Pennsylvania Superior Court in December of 2000. Nevertheless, a claim in quantum meruit would not guarantee plaintiff a percentage of the recovery that was set forth in his fee agreement with the plaintiff. However, the trial judge determined, in the interest of justice, the plaintiff was entitled to reimbursement of his expenses, because these had never been refuted, nor seriously disputed by the defendant.

Under Pennsylvania law, a client has the absolute right to terminate the attorney-client relationship regardless of any contractual relationship between the two parties. *Hiscott and Robinson v. King, supra; Kenis v. Perini Corp.,* 542 Pa. Super. 634, 682 A.2d 845 (1996); *Fowkes v. Shoemaker,* 443 Pa. Super. 343, 661 A.2d 877 (1995). Where a party has effectively terminated an attorney's representation before the conclusion of an action, under the circumstances presented here the attorney has a cause of action to recover compensation from the client for work done on the case and not from successor counsel, as plaintiff attempted in *Cherry v. Weiss, supra; Kenis v. Perini Corp.,* 542 Pa. Super. at 642, 682 A.2d at 849; *Styer v. Hugo,* 422 Pa. Super. 262, 619 A.2d 347 (1993), *aff'd,* 535 Pa. 610, 637 A.2d 276 (1994). The statute of limitations for a quantum meruit action is four years from the date of termination of the attorney's representation, and amendment of a pleading to add such an action will not be permitted after the four years limitations period has run. 42 Pa.C.S. §5525(4); *Kenis v. Perini Corp., supra; Fowkes v. Shoemaker, supra.* Therefore, plaintiff's

attempts to withdraw any claim for fees without preju-
dice, in the face of defendant's refusal to abandon the
statute of limitations defense, would have been seriously
misadvised. Hence, the contention set forth in paragraph
10 of the concise statement alleging wrongful refusal by
the court to grant plaintiff's motion for a voluntary non-
suit with leave to reinstate the action after the malprac-
tice case appeal was concluded is utterly baseless.

Plaintiff insists that he could not litigate a claim for
quantum meruit when there was no "res" in court. How-
ever, it is the law that no fund in court is necessary to
prevail on an action in quantum meruit, because the claim
can be brought even when the party from whom com-
pensation is sought has not prevailed in court. Indeed,
plaintiff recognized this contingency when averring in
paragraphs 29 and 30 of his amended complaint that, "if
there is no recovery in the malpractice action, plaintiff
still seeks quantum meruit recovery for the reasonable
value of his professional services rendered to defendant
up to the date of discharge plus expenses of litigation."
Plaintiff is simply not foreclosed from seeking compen-
sation pursuant to a contingent fee agreement which de-
fendant prevented him from honoring when terminating
plaintiff's employment.

It is settled in the law that a 10-factor test is to be
applied in determining the amount of any quantum meruit
recovery, *i.e.,* (1) the amount of work performed; (2) the
character of the services rendered; (3) the difficulty of
the problems involved; (4) the importance of the litiga-
tion; (5) the amount of money or value of the property in
question; (6) the degree of responsibility incurred; (7)
whether the fund involved was created by the attorney;

(8) the professional skill and standing of the attorney in his profession; (9) the results he was able to obtain; and (10) the ability of the client to pay a reasonable fee for the services rendered. *LaRocca Estate, supra,* 431 Pa. at 546, 246 A.2d at 339. Plaintiff asserts in paragraph four of the concise statement that in refusing to state whether Pennsylvania law limits quantum meruit recovery to hourly compensation, the trial court rendered plaintiff unable to prepare for trial as he was without reasonable notice of what to prove. The statement is, in a word, ridiculous. The law is clear and easily accessible to the plaintiff, a licensed and practicing attorney, who alone had the burden of proving his case in court.

Further, contrary to plaintiff's assertion in paragraph five of the concise statement that the trial court ruled "by implication," that a discharged attorney seeking quantum meruit recovery is limited to hourly compensation alone, there is no such ruling anywhere in the record, nor was one ever made in fact. The law is clear that the amount of work performed is only one of numerous factors to be considered in deciding a quantum meruit award. There is no allegation from plaintiff that the court ever misstated the law as it concerns the factors that needed to be considered in a ruling as to what plaintiff may have been entitled to under this theory of recovery. It is also the law that attorney billing records are not necessary to prove a charging lien in a contingency fee case where hourly billing records are routinely not kept, and where recovery of the lien is governed by the equitable principles under which a lien to plaintiff would have been disallowed. *Molitoris v. Woods,* 422 Pa. Super. 1, 618 A.2d 985 (1992).

The same factors listed in *LaRocca Estate, supra,* are to be considered in determining the fee to be paid to an attorney asserting a charging lien. Therefore, plaintiff's contention in paragraph seven of the concise statement that the trial court committed error in ruling that "events occurring after plaintiff's discharge, including trial counsel's use of plaintiff's witnesses and work product at the trial of the underlying action were irrelevant and inadmissible" is utterly unfounded. Recovery in quantum meruit need not be based on hourly records in a contingency fee case where they are routinely not kept because there are numerous other factors that may be considered by a court in determining a reasonable fee. *Mulholland v. Kerns,* 822 F. Supp. 1161 (E.D. Pa. 1993). Quantum meruit is a very fact sensitive determination and Pennsylvania courts may find other ways to calculate attorney fees in whatever way seems most reasonable, so long as they adhere to the standards put forward in *LaRocca Estate. Mulholland v. Kerns, supra,* 822 F. Supp. at 1169. Plaintiff has presented no citation to the record where he was advised to the contrary. Therefore, his self-serving accusation in that regard must be deemed meritless, as must his contentions that the court, and not he, had the responsibility of determining which remedy he needed to pursue, and of researching those remedies in the law.

## 3. REFUSAL TO GRANT CONTINUANCE

Plaintiff alleges in paragraph eight of his concise statement that "the trial court refused to continue the trial, even after plaintiff's witness, John Luchsinger, Esquire (defense counsel in the underlying action), asserted the

attorney-client privilege pending appeal of the underlying action." Plaintiff claims that this refusal operated to deprive him of his federal constitutional right to his day in court and of the ability to prove that he, and not successor counsel, was primarily responsible for the successful outcome of the malpractice trial and the creation of any fund that resulted. The record nevertheless evinces that plaintiff was given four weeks in which to obtain the deposition testimony of Mr. Luchsinger and that of the other witnesses he intended to present to prove his claim for attorney fees. The trial court did not deprive plaintiff of the opportunity to present the testimony of his witnesses, plaintiff did. The trial court did not prevent plaintiff from proving his claim, the plaintiff abrogated that responsibility entirely on his own.

The grant or refusal of a request for a continuance is within the discretion of the trial court and only where such discretion has been abused will the refusal of a continuance be reversed. *Birdsall v. Carbon County Board of Assessment & Revision of Taxes,* 168 Pa. Commw. 266, 649 A.2d 740 (1994); *Phoenix Mutual Life Insurance Company v. Radcliffe on the Delaware Inc.,* 439 Pa. 159, 266 A.2d 698 (1970). Four factors are used to determine whether a continuance was properly denied: (1) whether the delay prejudiced the opposing party; (2) whether opposing counsel was willing to continue the case; (3) the length of the delay requested; and (4) the complexities involved in presenting the case. *Snyder v. Port Authority of Allegheny County,* 259 Pa. Super. 448, 393 A.2d 911 (1978). Plaintiff does not argue any of these factors, nor can he show that he was not granted additional time to present his case. Counsel for the defendant

opposed the indefinite continuance proposed by the plaintiff, and plaintiff later acquiesced to the allowance of four additional weeks following the third day of testimony to prepare and present the deposition testimony of additional witnesses he desired to present. There were no complexities which would warrant a continuance without end in this case which was first called to trial on March 16, 1998 and which had previously been continued nine times. Plaintiff had presented lengthy testimony and numerous exhibits adducing the work he had done in the malpractice action. A comparison of work done by successor counsel on the case was not necessary to determine recovery in quantum meruit. Because plaintiff was engaged in litigating a quantum meruit action against his client, equity would not grant him a charging lien. For all of the foregoing reasons, it is submitted that an indefinite stalling of the completion of trial in this action until the malpractice case appeal had been resolved was utterly unnecessary.

## CONCLUSION

Plaintiff sought post-trial relief in the form of vacating the verdict and reinstating plaintiff's quantum meruit claim against the defendant. However, the court never dismissed plaintiff's claim for quantum meruit, and the evidence of the amount of any fee to be awarded on a charging lien claim would, in any event, have been the same. The evidence presented by plaintiff during the three days of trial provided a sufficient basis from which the court, exercising its sound discretion, could fairly and justly conclude that he was entitled to reimbursement

from the defendant only for the expenses incurred in the underlying action prior to termination of his employment.

Plaintiff takes no issue with the amount set forth in the verdict, nor with the fact that this sum was awarded at all. Plaintiff is entitled to this sum, under law, whether or not there is a fund or "res" before the court or otherwise available, based upon the contingency fee agreement with defendant and the intentions of the parties. In short, plaintiff wants merely to proceed with a claim he has already established, against a verdict he has already won. Plaintiff's election to present no further evidence in support of his plea for compensation was his own. For all of the foregoing reasons, it is respectfully submitted that the relief sought here has already been awarded, and that the trial court's verdict should be sustained.