619 A.2d 347

**David L. STYER, Esquire**

v.

**Randall W. HUGO, Esquire, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 11, 1992.

Filed Jan. 19, 1993.

Randall W. Hugo, in pro per.

David L. Styer, in pro per.

Before WIEAND, McEWEN and BECK, JJ.

BECK, Judge:

This appeal from a judgment in favor of appellee, David L. Styer, Esquire, and against appellant, Randall W. Hugo, Esquire, poses the following issue:

Is a lawyer who originally represented the plaintiffs in a personal injury action pursuant to an oral contingent fee agreement and who, upon being discharged by his clients prior to the termination or settlement of the action, requested no fee from his clients but agreed with the clients' second lawyer that any fee received by the second lawyer would be

shared with the first lawyer, entitled to recover a portion of the contingent fee ultimately received by the clients' third lawyer who settled the personal injury action and had no agreement with the clients or either of their prior lawyers regarding the payment to the first lawyer of a portion of the fee?

This interesting question arises from the following facts. On November 24, 1984, Isaia Piccinino was injured at a furniture store when a chair on which he was sitting collapsed under him. At some time following this incident, Mr. and Mrs. Piccinino retained appellee, David Styer, Esquire, to represent them in a personal injury action seeking damages allegedly arising from Mr. Piccinino's fall. Although no written fee agreement between the Piccininos and Styer was produced, the trial court nevertheless found that the Piccininos had agreed to pay Styer a one-third contingent fee.

Styer filed his entry of appearance and a writ of summons against the defendants in the Piccininos' action on November 5, 1986. He filed a complaint on January 29, 1987. Thereafter, he conducted discovery in the matter. Most of his time was spent attempting to establish the true cause of Mr. Piccinino's medical problems. Apparently, Mr. Piccinino had a highly litigious past and had filed numerous lawsuits and claims. In some of those prior matters, Mr. Piccinino had sought recovery for injuries similar to those that he now claimed to be caused by his fall from the chair. Thus, there was a question as to whether Mr. Piccinino's claimed injuries were actually pre-existing conditions. Although it would appear that no actual settlement discussions took place during Styer's representation of the Piccininos, he did convey a demand of $1.5 million dollars to the defendants. This was not accepted.

At some point in late 1988, the Piccininos discharged Styer. They were dissatisfied with the progress of the case and thought new counsel might expedite resolution of the matter. On December 12, 1988, Styer withdrew his appearance on behalf of the Piccininos. He did not request the payment of any fees from the Piccininos at that time.

The Piccininos then retained Christopher Brill, Esquire. Apparently Brill and Styer agreed to a fee sharing arrangement, which Brill confirmed in a letter to Styer, as follows:

Dear Dave [Mr. Styer]:

This letter will confirm our discussions of November 29, 1988 wherein you transferred the above file to me for future handling. This will also confirm our agreement to equitably divide any attorney fee realized in this case along the lines we discussed.

. . . .

cc: Mr. and Mrs. Isaia Piccinino

P.S. to Dave only: As further clarification of the above, we have agreed that you will receive *at a minimum* one-third of the attorney fee realized and that this amount will be adjusted upward as circumstances permit depending upon the ultimate recovery, time expended to obtain same, etc. Of course, your costs advanced will also be reimbursed from any eventual settlement or verdict proceeds.

Very truly yours,
Christopher J. Brill

Both the testimony at trial and the foregoing letter reveal that the Piccininos were fully informed as to this fee sharing arrangement.

Brill expended very little time in prosecuting the Piccininos' case. It became clear from the outset that Brill and the Piccininos had starkly different views regarding the value of the case. Brill thought a settlement demand of somewhat higher than $50,000 might be reasonable, whereas the Piccininos wished to demand $750,000. As a result, Brill suggested that the Piccininos find themselves another lawyer.

The Piccininos then retained appellant, Randall W. Hugo, Esquire. They located Hugo through a referral from another of Hugo's clients. On October 30, 1989, the Piccininos executed a written contingent fee agreement with Hugo in which they agreed to pay him a 33½% contingent fee, plus expenses. The agreement made no mention of any fee that would be due

to Styer and recited that it was the entire agreement between the parties. At the time this agreement was executed, the Piccininos did not inform Hugo that Messrs. Styer and Brill had agreed, with the Piccininos' approval, to share any fee Brill might have recovered.

On the same day that the Piccininos executed the contingent fee agreement with Hugo, Brill wrote to the Piccininos and confirmed that he would not charge them any fee for the services he had rendered them, but that whenever it was convenient for them he would expect reimbursement of $112.50 in costs he had incurred on their behalf. This letter also confirmed that Hugo would thereafter represent the Piccininos. No copy of this letter was sent to Styer, nor did Brill notify Styer through any other means that he had given up the representation of the Piccininos and had relinquished his claim to any fees.

On November 2, 1989, Brill wrote to Hugo confirming that he had withdrawn and that he had turned the entire file over to the Piccininos. Brill did not inform Hugo of his arrangement with Styer regarding fee sharing. It was not until Hugo reviewed the file in the Piccininos' case, which was after the Piccininos had signed the contingent fee agreement with Hugo, that he became aware of this arrangement.

Hugo entered his appearance on behalf of the Piccininos on November 3, 1989. He immediately commenced work on the case and, after conducting further discovery and engaging in negotiations over a period of months, achieved a settlement for $105,000 in January 1990. The Piccinino action was terminated on February 7, 1990 and Hugo received his agreed contingent fee.

After the settlement was concluded and Styer learned of it, he contacted Hugo to request payment of a portion of the fee Hugo had received in consideration of Styer's previous work in the case. Brill also called Hugo to urge him to pay Styer a portion of the contingent fee. Hugo refused, but did reimburse Styer for the out-of-pocket expenses he had incurred in representing the Piccininos.

Styer then initiated this action against Hugo, contending that Hugo had a legal obligation to remit a portion of the fee to Styer. He argued that he was due compensation on a quantum meruit basis because unless such compensation were paid, Hugo would be unjustly enriched by having received the benefits of Styer's work on the case. After a trial without a jury conducted on July 26, 1991, the trial court entered a verdict in favor of Styer in the amount of $11,000, or approximately one-third of the fee Hugo had received. After post-trial motions were denied, Hugo filed this timely appeal.

■ On appeal, Hugo argues that the trial court erred in refusing to grant judgment n.o.v. in his favor. We agree.

As the Supreme Court has recently opined:

In reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor.

. . . .

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.

*Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003, 1007 (1992) (citations omitted).

In the instant case, Hugo seeks judgment n.o.v. on the first of the foregoing grounds, i.e., he argues that the trial court committed a clear error of law in applying the doctrine of unjust enrichment to the facts of this case.

■ "Unjust enrichment" is essentially an equitable doctrine. The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986), *overruled*

*on other grounds, Van Buskirk v. Van Buskirk,* 527 Pa. 218, 590 A.2d 4 (1991); *see also Burgettstown–Smith Township Joint Sewage Authority v. Langeloth Townsite Co.,* 403 Pa.Super. 84, 588 A.2d 43 (1991). Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. *State Farm Mutual Automobile Insur. Co. v. Jim Bowe & Sons, Inc.,* 372 Pa.Super. 186, 539 A.2d 391, 393 (1988) (citing *Myers–Macomber Engineers v. M.L.W. Constr. Corp. and HNC Mortgage and Realty Investors,* 271 Pa.Super. 484, 414 A.2d 357 (1979); *Gee v. Eberle,* 279 Pa.Super. 101, 420 A.2d 1050 (1980)).

Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is *unjust.* The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. *Meehan v. Cheltenham Township,* 410 Pa. 446, 189 A.2d 593 (1963) (where two parties enter into contract which ultimately benefits third party and one contracting party fails to perform, in absence of misleading by third party there is no right to restitution against third party to remedy contracting party's breach; although third party is enriched, enrichment not deemed unjust); *see also D.A. Hill Co. v. Clevetrust Realty,* 524 Pa. 425, 573 A.2d 1005 (1990) (same).

Where unjust enrichment is found, the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant. This contract, referred to as either a quasi-contract or a contract implied in law, requires that the defendant pay the plaintiff the value of the benefits conferred, i.e. that the defendant make restitution to the plaintiff in quantum meruit. *See Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 290–91, 259 A.2d 443, 449 (1969); *DeGasperi v. Valicenti,* 198 Pa.Super. 455, 457, 181 A.2d 862, 864 (1962).

In the instant case, the trial court found that Hugo had been unjustly enriched and, therefore, that Styer was entitled

to compensation in quantum meruit. In so concluding, the trial court relied exclusively on this court's opinion in *Johnson v. Stein*, 254 Pa.Super. 41, 385 A.2d 514 (1978), which the trial court interpreted as specifically approving application of the doctrine of unjust enrichment in a situation analogous to the one presented here. We, on the other hand, find that to the extent that the *Johnson* court opined on the subject of unjust enrichment, its statements are clearly dicta. Nor do we find the factual situation presented in *Johnson* to be sufficiently analogous to the facts of this case to warrant reliance on the *Johnson* court's analysis.

In *Johnson*, the appellant attorney initially represented certain plaintiffs in a tort case on a contingent fee basis. Appellee attorney was an associate in appellant's office who worked on the tort case. Appellant terminated appellee, and the plaintiffs in the tort case then retained appellee to prosecute their case. Appellee settled the case. Appellant filed a Notice of Attorney's Lien, asserting a charging lien on the proceeds of the settlement, and the proceeds were paid into court. Eventually, the trial court struck the Notice of Attorney's Lien, finding that appellant was not entitled to a charging lien. *Id.* at 42, 385 A.2d at 515.

On appeal, this court agreed with the trial court that appellant was not entitled to a charging lien and affirmed. The court then proceeded to discuss whether appellant, having failed to establish entitlement to a charging lien, might have another avenue of recourse against appellee, i.e., an action asserting unjust enrichment and a contract implied-in-law. The court found that appellant might well attempt to assert such a theory against appellee.

As this brief statement of the facts and procedural posture of *Johnson* reveals, the appellant had never sought recovery on a theory of unjust enrichment at any point in either the trial court or on appeal. The *Johnson* court's gratuitous speculation as to whether appellant might be able to pursue such a theory at a later time is pure dicta. We further note that even in its dicta, the *Johnson* court did *not* conclude that appellant could recover a portion of the fee on a theory of

unjust enrichment, as the court expressly stated that it could not determine on the record before it whether appellant would be entitled to expenses only, or to a fee as well. *Id.* at 46, 385 A.2d at 517. Moreover, as the foregoing summary also indicates, the facts of *Johnson* are starkly different from those involved here. *Johnson* was a dispute between an employer-attorney and his former employee-attorney who, upon termination of his employment, took his former employer's client. In contrast, the instant case involves a dispute between two unrelated attorneys, with the additional complicating factor of the involvement of attorney Brill.

We have carefully considered the course of events precipitating this fee dispute. We have concluded that while Hugo realized some, albeit unquantifiable, benefit from the work that Styer performed on behalf of the Piccininos, nevertheless, his retention of that benefit under the circumstances of this case was not unjust. We note at the outset that the record is not clear as to the degree to which Hugo benefitted from Styer's work. Despite this, the trial court concluded that Hugo "would not have been so favorably situated to settle" the Piccininos' case had it not been for Styer's early work on the matter. The record does not support the conclusion that without Styer's efforts the highly favorable resolution of the case would not have been achieved. Styer allowed four years after the commencement of the action to pass while he amassed Mr. Piccinino's prior medical records and engaged in a fruitless attempt to attribute various of Mr. Piccinino's medical problems to his fall from the chair so as to increase the potentially recoverable damages. The fact that the case languished with no progress toward settlement at all during these four years was, in fact, the reason the Piccininos dismissed Styer. In contrast, as soon as Hugo took over the case he took a realistic view of its value, convinced the Piccininos that his appraisement was correct and achieved a very favorable settlement. The record does not demonstrate that Hugo's ultimate success in negotiating this settlement was materially advanced by Styer's work.

Assuming, arguendo, that Hugo realized some benefit from Styer's work in collecting Mr. Piccinino's medical records, we nevertheless find that his retention of this benefit is not unjust. Rather, we find that Styer did not adequately protect whatever right to compensation he might have had vis-a-vis his clients, and that the actions of both the Piccininos and Brill further compromised Styer's ability to receive compensation.

Styer may have had a legal right to compensation from the Piccininos for the services he had already rendered to them as of when they terminated him. *See Powers v. Rich*, 184 Pa. 325, 39 A. 62 (1898); *Dorsett v. Hughes*, 353 Pa.Super. 129, 509 A.2d 369 (1986). He did not choose to enforce this right against the Piccininos. Instead, he entered into an agreement with Brill pursuant to which he would receive a portion of whatever fee Brill realized from the case. Notably, their agreement made no provision for what would happen if Brill did not see the case through to judgment or settlement or, as ultimately happened, waived his right to any fee in the matter. Further, when Brill did waive his right to a fee and terminated his relationship with the Piccininos, he never informed Styer that he had done so or that he had turned the file over to Hugo. Nor did the Piccininos inform Hugo of the arrangement between their prior attorneys when they initially retained Hugo and contractually agreed to pay him a one-third contingent fee, with no provision for the payment of any portion thereof to Styer. It was not until the settlement of the Piccininos' case had been completed that both Styer and Brill first contacted Hugo to attempt to have a portion of the fee remitted to Styer.

We find no basis in this scenario for concluding that Hugo has been unjustly enriched. Rather, Styer inadequately protected his right to compensation for the services he had rendered. Moreover, Brill and the Piccininos both compromised Styer's right by their later actions. This, however, does not lead us to the conclusion that whatever enrichment thereby accrued to Hugo was unjust. When Hugo took over this matter, he did not know of the arrangement between Styer and Brill and the Piccininos. When he shortly thereafter

found out about it, all he learned was that Brill had agreed to remit to Styer a portion of whatever he recovered. He did not know and had no obligation to ascertain what arrangements, if any, were made between Brill, Styer and the Piccininos, when Brill ultimately recovered nothing in the case.

In sum, the reason Styer has not been paid is that he first failed to avail himself of the right to compensation from the Piccininos that the law provided him, and then relied on his agreement with Brill, which through no fault of Hugo's, ultimately yielded Styer nothing. *See Meehan, supra* (where a party inadequately protects its right to compensation from the direct recipient of its services, it cannot thereafter seek restitution against one indirectly benefited by those services who in no way induced the provision of services).

The judgment of the trial court is reversed, and the court is directed to enter j.n.o.v. in favor of Hugo.