**JUNE ROBERTS AGENCY, INC.**

**v.**

**VENTURE PROPERTIES, INC. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 16, 1996.

Decided May 15, 1996.

Robert E. Mongue, Kennebunk, Maine, for Plaintiff.

James B. Bartlett, York, Maine, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

June Roberts Agency, Inc. appeals and Venture Properties, Inc. and Patrick Rocheleau cross-appeal from the entry of a summary judgment in the Superior Court (York County, *Fritzsche, J.*) in favor of Venture and Rocheleau on June Roberts's seven count complaint and in favor of June Roberts on Venture's M.R.Civ.P. 11 motion for expenses and attorney fees. Because we agree with June Roberts that the court erred in entering a summary judgment on Counts I, II, and III of its complaint, we vacate the judgment as to those counts.

In August 1992 Guillermo and Alice Larrea were shown various lots and homes in the York area by an agent of June Roberts, a real estate agency located in York. The Larreas purchased a large unimproved lot in York in the fall of 1992 and June Roberts received a commission. An agent of June Roberts recommended Patrick Rocheleau, the president and sole shareholder of Venture, a corporation doing business as Rocheleau Custom Homes in York, as a home builder. Later that fall the Larreas entered into a six-month listing agreement with June Roberts for the sale of four lots included in their previous land purchase. In February 1993 the Larreas entered into a contract with

Venture for the construction of their home for $435,000. June Roberts claims that there was an existing agreement between it and Venture to the effect that Venture would pay June Roberts a 5% fee for any referral that resulted in a construction contract. Venture contends that an agent of June Roberts approached it about a 5% fee for the referral of the Larreas, similar to two previous transactions between the parties, but that Venture refused to pay unless the Larreas were told about the arrangement. In April 1993 June Roberts's exclusive listing agreement with the Larreas expired and the Larreas did not renew it.

In January 1994 June Roberts filed a seven count complaint against both Venture and Rocheleau. In support of their motion for a summary judgment Venture and Rocheleau submitted an affidavit of Rocheleau. In support of its motion in opposition June Roberts submitted an affidavit of its president, Ralph Pape. The court granted a summary judgment to Venture and Rocheleau on all counts. This appeal followed.

■■■ A summary judgment is proper when the party that bears the burden of proof on an essential element at trial has presented evidence that, if she presented no more, would entitle the opposing party to a judgment as a matter of law. *Guiggey v. Bombardier,* 615 A.2d 1169, 1171 (Me.1992). In reviewing a grant of a summary judgment we view the evidence in the light most favorable to the party against whom judgment has been granted and review the trial court decision for errors of law. *Casco Northern Bank v. Estate of Grosse,* 657 A.2d 778, 780 (Me. 1995). We independently determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *Id.*

### Breach of Contract

In Count I of its complaint June Roberts alleges that Venture breached an existing contract when it refused to pay a 5% fee for the Larrea contract. The court found that June Roberts failed to allege any details of an enforceable contract and therefore could not sustain its burden of establishing the existence of a contract. June Roberts contends that the existence of a contract between the parties for a "referral fee" is established by previous dealings between the parties and that there is a disputed issue of material fact whether the same agreement applied to the Larrea transaction.

Twice prior to the Larrea transaction Venture had agreed to pay June Roberts a fee of 5% of the contract price for a referral resulting in a construction contract. Venture concedes the existence of both of these undertakings, but argues that in both instances the fee agreement was known to the buyer and the 5% was built into the construction contract. Venture argues that its refusal to pay a 5% fee in this case was the result of June Roberts's attempts to hide the existence of the fee from the Larreas. June Roberts claims that its hesitancy regarding disclosure of the fee came only after Venture tried to alter the agreement to lower the fee to 1% of the contract price. June Roberts contends that it told Venture that it wanted to wait until the dispute was resolved before disclosure was made to the Larreas.

■■■ "The existence of a contract is a question of fact to be determined by the jury." *Bates v. Anderson,* 614 A.2d 551, 552 (Me.1992); *see also Agway, Inc. v. Ernst,* 394 A.2d 774, 777 (Me.1978) (recognizing that the existence of an "agreement" involves an evaluation of the conduct of the parties and therefore is appropriately a question for the trier of fact).

> To establish a legally binding agreement between parties, the mutual assent to be bound by all of its material terms must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties.

*Smile, Inc. v. Moosehead Sanitary Dist.,* 649 A.2d 1103, 1105 (Me.1994). Venture's concession that it had agreed to a 5% referral fee with June Roberts on two prior occasions creates a genuine issue of material fact whether a contract exists between it and Venture whereby Venture will pay a 5% fee for every home construction contract that

results from a referral by June Roberts. Although there is an issue as to whether June Roberts attempted to conceal the commission from the Larreas, it is a factual issue that should not be resolved at this stage. Accordingly, the court erred in granting a summary judgment as to Count I.

### Unjust Enrichment and Promissory Estoppel

 In Counts II and III of its complaint June Roberts seeks recovery of the 5% fee on equitable theories of unjust enrichment and promissory estoppel.[1] The court granted a summary judgment because "[t]he procedure of charging referral fees is not one that [it] could ever sanction...." June Roberts argues that the court incorrectly interpreted its actions in seeking a referral fee as inappropriate and granted a summary judgment based on its distaste for such a fee.

The court's judgment is based on an acceptance of Venture's version of the facts of this case; namely, that June Roberts attempted to deceive the Larreas by hiding the referral fee from them. The court's position, however, ignores the procedural posture of this case. June Roberts should not at this stage be estopped from pursuing its equitable remedies if it has raised a genuine issue of material fact regarding proof of its claims. In the light most favorable to June Roberts, a genuine issue is raised whether it was attempting to hide the fee or instead whether it wanted to resolve the fee dispute before disclosing it to the Larreas.[2]

 To establish a claim for unjust enrichment June Roberts must prove that (1) it conferred a benefit on Venture, (2) Venture had appreciation or knowledge of the benefit,

and (3) Venture's acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. *ERA–Northern Assoc. v. Border Trust Co.*, 662 A.2d 243, 245 (Me.1995). Recovery pursuant to a claim for unjust enrichment is limited to the amount of the benefit realized and retained by the defendant. *Bowden v. Grindle*, 651 A.2d 347, 351 (Me.1994). "The damages analysis is based on principles of equity, not contract." *Aladdin Elec. Assoc. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me.1994).

In *ERA–Northern Assoc.* we held that a real estate broker could recover a commission on a claim of unjust enrichment when the plaintiff broker established that its efforts resulted in a benefit to the defendant seller, appreciated by the seller, under circumstances that would have made it inequitable for the seller to not pay. *ERA–Northern Assoc.*, 662 A.2d at 245–46. In the instant case June Roberts has at least raised a genuine issue of material fact where evidence in the record establishes that it was in first contact with the Larreas, Venture had previously paid a fee for similar referrals, and the Larreas signed a $435,000 construction contract with Venture shortly after the referral.

 Promissory estoppel is an accepted doctrine in Maine. *Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me.1978). Restatement (Second) of Contracts § 90 provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be

---

**1.** We recognize that the existence of a contract precludes recovery on a theory of unjust enrichment because unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship. *Top of The Track Assoc. v. Lewiston Raceways, Inc.*, 654 A.2d 1293, 1296 (Me.1995). June Roberts, however, is not precluded from pleading both theories because a factfinder may find that no contract exists and may still award damages on the theory of unjust enrichment.

**2.** Venture's argument that June Roberts's conduct in seeking a referral fee violates Maine law regarding the fiduciary duties of brokers is simi-

larly unavailing, at least at this stage. Whether June Roberts violated any requirement of 32 M.R.S.A. § 13067 (1988 & Supp.1995) to act in good faith is necessarily a factual determination that depends on whether June Roberts was merely seeking to straighten things out with Venture prior to disclosing the referral fee to the Larreas, or instead whether June Roberts was in fact trying to hide the fee, a violation of section 13067(1)(H) as interpreted by the Real Estate Commission. *Referral Fees from Builders*, Real Estate News (Real Estate Comm'n, Augusta, Me.), March 1994 at 7.

avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

The promise relied on by the promisee need not be express but may be implied from a party's conduct. *Martin v. Scott Paper Co.,* 511 A.2d 1048, 1050 (Me.1986).

Promissory estoppel could be viewed as a recovery of last resort in this case. June Roberts, however, does allege the existence of a contract, and, alternatively, a promise from Venture to pay the referral fee. The existence of a promise could be derived from the conduct of the parties in the two previous transactions in which Venture agreed to pay a referral fee to June Roberts. Whether June Roberts relied on the supposed promise to pay a fee of 5% is a factual question. A genuine issue as to the existence of its reliance is at least raised by a letter from June Roberts's president to Rocheleau in March 1993, in which he alludes to the fact that June Roberts could easily have steered the Larreas to another builder who would have paid the fee.

### Intentional Interference with Contractual and Business Relations

Count IV alleges intentional interference with the existing contractual relationship between June Roberts and the Larreas; namely, the listing agreement. Count V alleges that Venture and Rocheleau knew of and interfered with a prospective business relationship between June Roberts and Larrea. Count VI alleges that Rocheleau intentionally interfered with the existing business relationship between June Roberts and Venture, the corporation of which he is the sole stockholder and president. The court granted a summary judgment as to all three counts because June Roberts "failed to produce any evidence . . . that defendants interfered with its contractual relations through either fraud or intimidation."

**3.** Count VII of June Roberts's complaint seeks damages resulting from alleged defamatory and slanderous statements made by Rocheleau. June

"A party can recover damages for a tortious interference with a contract if a person by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful interference." *Grover v. Minette–Mills, Inc.,* 638 A.2d 712, 716 (Me.1994); *see also C.N. Brown Co. v. Gillen,* 569 A.2d 1206, 1210 (Me.1990) (requiring showing that fraud or intimidation resulted in breach of existing contract that would have continued but for wrongful interference). Additionally, the relationship that is interfered with must be "existing." *St. Hilaire v. Berta,* 588 A.2d 309, 310 (Me.1991). Because the record contains nothing to suggest any fraud or intimidation on the part of Venture or Rocheleau in any of the dealings at issue in this case the summary judgment as to Counts IV through VI was properly granted.[3]

### Venture's Rule 11 Motion

M.R.Civ.P. 11 states that the court *may* impose sanctions "[i]f a pleading or motion is signed with intent to defeat the purpose of" the rule. Our review of the record in this case reveals that the court acted within its discretion in declining to order sanctions against June Roberts.

The entry is:

Judgment on Counts I, II, and III vacated; judgment as to all other counts affirmed; remanded for further proceedings consistent with the opinion herein.

All concurring.

Roberts does not challenge the entry of a summary judgment as to Count VII.