GLAZER, J,
ORDER
And now, this 11th day of May 2015, upon consideration of the supplemental motions for summary judgment and all responses in opposition, it hereby is ordered that the supplemental motions for summary judgment, Control Numbers 15030310, 150113320 and 15031930 are granted against moving defendants[1] and defendant Bruce McKissock’s remaining cross claim is dismissed in its entirety against moving defendants.
It is further ORDERED that the supplemental motions for summary judgment, Control Numbers 15012307, 15030309, and 15030176, filed by defendants Fred Applegate Trust, Bruce Evans, Richard Hansen and Holly Zug Trust, defendant William A. Hitschler and William Fretz are dismissed as moot.[2]
This matter has a long and circuitous history in which McKissock’s crossclaim for unjust enrichment remains the only claim left in this litigation. In resolving the remaining issue, the court adopts and incorporates its prior opinions issued on November 3, 2013, July 18, *377 2014 and January 12, 2015 in this action as well as the opinions dated August 14, 2014 and November 6, 2014 in a related action captioned Grimes v. Polymer Dynamics Inc. et.al., November Term 2011 No. 675. At issue now is whether crossclaim defendants, PAFCO Investment LLC, Peter Ferentinos (hereinafter “PAFCO”) and William Peoples, Debbie Kocher, Craig A. Peoples, Duane Peoples, Brad Jacoby, Dan Kacmar, Milthon Martinez, Jessica Moran, Joseph Rock, Peter Staffeld, Elizabeth Huggett, Arthur Peoples, Scott Peoples and Stanley Staffeld (hereinafter “Litigation Fund Investors”)[3] were unjustly enriched by receiving distributions from the Bayer Litigation.
PAFCO was a creditor of PDI. Peter Ferentinos is majority shareholder, managing member and/or president of PAFCO. PAFCO made several loans to PDI over the course of several years to assist PDI in funding the prosecution in the PDI v. Bayer Corp. litigation. On August 14,2014, this court ruled that PAFCO was the senior secured creditor of PDI at the time the judgment was satisfied in PDI v. Bayer Corp.[4] In addition to PAFCO, the Litigation Fund Investors also made loans to PDI for purposes of funding PDI v. Bayer Corp. in or about 2005 through 2007.
*378 On or about August 28, 2008, McKissock entered into a fee agreement with PDI.[5] The agreement provides in pertinent part as follows:
NOW THEREFORE, in consideration of McKissock’s agreement to continue prosecution of this litigation, it is hereby agreed and intended between the parties on the following fee arrangement:
1. Based on the current award of $12.5 Million, plus accrued interest, McKissock shall be entitled to a 1/3 gross legal fee;
2. From the 1/3 gross legal fee, for and in consideration of loan accommodations in an amount of up to Three Million Dollars ($3,000,000.00) to the Polymer Dynamics Litigation Fund, McKissock has agreed to pay principal, interest and incentive to the Polymer Dynamics litigation fund note holders, as indentified.
a. This payment has priority over any and all other payments and will be paid prior to any payment to McKissock under this fee arrangement with PDI or payment of obligations under the March 1, 2005 Revised Fee Agreement with M&H.
3. Should the Third Circuit grant a new trial and additional damages are recovered, or alternatively, if Bayer would agree to a resolution of this claim above the current award amount, that increased award and/ *379 or settlement shall not be subject to the 1/3 agreement, but shall be subject to a sliding scale contingency fee to be mutually agreed upon between PDI and McKissock, which agreement shall recognize M&H’s right to recover expenses advanced and its contingency fee interest in the $12.5 Million Verdict under the terms of the March 1, 2005 Revised Fee Agreement.
4. The firm of M&H shall subordinate its right to repayment of their expenses and its right to receive its contingent fee interest in the $12.5 Million Verdict to the payout of the PDI Litigation Fund expense. Once the PDI litigation fund expenses are satisfied, any remaining portion of the 1/3 gross legal fee on the $12.5 Million verdict will be allocated to reimburse M&H for expenses advanced and to the payment of M & H’s contingency fee agreement (the March 1, 2005 Revised Fee Agreement) in that verdict.
5. In regards to any tax liens, the balance of the award recovery, net of the attorney fees/litigation fund payments, would exceed any pending tax lien.
6. If no further recovery is obtained, then McKissock will receive no further compensation for the legal services he has rendered in this matter. However, PDI shall be responsible for reimbursement of out-of-pocket costs advanced by McKissock.
7. Representatives of the firm of M&H shall continue to maintain client-attorney confidentiality requirements with respect to this agreement and all other information *380 known about PDI during the time frame that the Bayer litigation remains open.
8. This agreement constitutes the entirety of the amended and restated fee agreement entered into between PDI, McKissock and M&H, and the terms and conditions of this agreement shall be controlled by applicable Pennsylvania law. Any dispute regarding payment of fees or reimbursement of costs on this matter shall be resolved by binding arbitration between the parties.
On June 24,2005, PDI obtained a verdict against Bayer for $12.5 million. Dissatisfied with the outcome, both parties appealed the award. In 2009, the Third Circuit Court of Appeals affirmed the jury verdict of $12.5 million. On September 30, 2010, Bayer paid $14,412,765.65 which constituted the verdict plus post judgment interest. The monies were deposited into the bank account of Gross McGinley, LLP, new counsel hired by PDI. PDI authorized Gross McGinley to pay: taxing authorities including the Internal Revenue Service and the City of Allentown, Gross McGinley, LLP and Bochetto & Lentz P.C. for legal fees and PAFCO, the secured creditor. PAFCO, upon receipt of the funds, paid the Litigation Fund Investors the principal amounts of their original notes. McKissock did not receive any payment for outstanding attorney fees incurred in the PDI v. Bayer litigation from the proceeds held by Gross McGinley, LLP.
*381 Discussion
“Unjust enrichment” is essentially an equitable doctrine.[6] Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred.[7] The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, the focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.[8] Notably, the doctrine of unjust enrichment does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff[9]
McKissock alleges it provided PAFCO and the Litigation Fund Investors with a benefit in the form of legal services. The benefit allegedly conferred resulted in the verdict in the PDI v. Bayer litigation. McKissock contends that PAFCO *382 and the Litigation Fund Investors were unjustly enriched by receiving distributions from the verdict proceeds in lieu of McKissock receiving his fee. Although, PAFCO and the Litigation Fund Investors did realize a benefit from McKissock’s legal services, the distribution of the proceeds by PDI to PAFCO and by PAFCO to the Litigation Fund Investors does not constitute unjust enrichment. PAFCO was a perfected secured creditor.[10] Secured creditors with valid UCC-1 filings have priority over unsecured creditors. This court has already ruled that McKissock did not have a charging lien providing him with a security interest in the Bayer Proceeds.[11] As such, McKissock was an unsecured creditor. Since PAFCO was a secured creditor and McKissock was an unsecured creditor, the distribution of the verdict funds to PAFCO before any payments to McKissock was proper based on the priority of perfected secured interests. Hence, the distribution and retention of the litigation funds by PAFCO is not unjust.[12] Consequently, the cross claim for unjust enrichment fails against PAFCO.
Similarly, the distribution to the Litigation Fund Investors also fails to satisfy the unjust requirement for *383 a claim of unjust enrichment to exist. PAFCO, the holder of a perfected secured interest, was properly in possession of the verdict proceeds once the tax obligations were satisfied. Once the funds were in PAFCO’s possession, PAFCO returned the principal loaned by the Litigation Fund Investors. PAFCO’s rights to the proceeds were superior to that of McKissock.[13] Once in PAFCO’s possession, PAFCO was privileged to distribute the funds to the Litigation Fund Investors if it so chose. As such, McKissock’s claim for unjust enrichment fails against the Litigation Fund Investors as well.
Additionally, McKissock lacks standing to bring the claim for unjust enrichment against non clients PAFCO and the Litigation Fund Investors. The case law provides that a discharged attorney does not have a quantum meruit action against the attorney who ultimately settles the case, but may have a valid quantum meruit claim against the client.[14] The same concept applies here. At no time were PAFCO and the Litigation Fund Investors McKissock’s clients nor did McKissock represent PAFCO or the Litigation Fund Investors in the underlying action. McKissock’s client was PDI. Hence, McKissock may only recover its attorney fees against PDI, its client and not third party creditors.[15]
*384 CONCLUSION
For the forgoing reasons, the supplemental motions for summary judgment are granted and defendant McKissock’s crossclaim for unjust enrichment is dismissed against moving defendants.

. It is unclear as to the status of Polymer Dynamics, Inc. in this action as there has never been counsel of record.

. Motions are moot due to an agreement to enter into mutual releases.

. These defendants are pro se. The Litigation Fund Investors also included William Fretz, W. Anthony Hitschler, Fred Applegate Trust, Holly Zug Trust, Bruce Evans, and Richard Hansen. McKissock agreed to enter into mutual releases of all claims with these crossclaim defendants. There has also been proposed mutual releases to crossclaim defendants Arthur Peoples, Scott Peoples, Elizabeth Huggett and Stanley Staffeld. As of the filing of this opinion, the court has not been informed if the proposal was accepted.

. Grimes v. PDI, 1111-675.

. McKissock had prior fee agreements with PDI. M&H refers to the law firm of McKissock and Hoffinan.

. Slyer v. Hugo, 422 Pa. Super. 262, 619 A.2d 347 (1993), aff’d, 535 Pa. 610, 637 A.2d 276 (1994).

. Schenck v. K.E. David, Ltd., 446 Pa. Super. 94, 666 A.2d 327 (1995).

. Mitchell v. Moore, 729 A.2d 1200, 1203-04 (1999)(quoting, Torchia v. Torchia, 346 Pa. Super. 229, 499 A.2d 581, 582 (1985).

. Styer v. Hugo, 422 Pa. Super. 262 (1992)(citing Meehan v. Cheltenham Township, 410 Pa. 446, 189 A.2d 592 (1963)(where two parties enter into a contract which ultimately benefits third party and one contracting party fails to perform, in absence of misleading by third party there is no right to restitution against third party to remedy contracting party’s breach; although third party is enriched, enrichment not deemed unjust).

. Grimes v. PDI, 1111-675 (August 14 ,2014, pg. 2, 3 and 5, 6).

. Grimes v. PDI, 111 1-675 (August 14, 2014, pg. 5-6).

. See, Meehan v. Cheltenham TP, 410 Pa. 446, 450-51, 189 A.2d. 593, 596. (1963)(“The restatement of restitution sets forth various rules for the determination of whether the retention of a particular enrichment is unjust. Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party. The restatement gives as an example of this principle the situation where A purchases a ring from C, a jeweler, for his fiancee B and then defaults in the payments. The restatement states that C cannot recover the ring or its value from B.”)

. This court already ruled that the amended agreement was invalid and against public policy. As such McKissock did not have a charging lien.

. See, Mager v. Bultena, 797 A.2d 948 (Pa. Super. 2002).

. McKissock’s reliance upon Sittig, Cortese & Wratcher, LLC v. New York Life Inv. Mgrnt., LLC, 2012 Pa. D. & C. Dec. LEXIS 337 (Pa. Com. Pl. Sept. 12, 2012) is misplaced. In Sittig, the claim by the law firm was permitted to continue since the defendant was not only a shareholder of the law firm’s client, but also because the defendant had directly paid legal fees to the law firm prior occasions. Here, PAFCO and *384 the Litigation Fund Investors were not McKissock’s clients and did not directly pay McKissock.