CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
BCD-CV-16-14

CENTRAL MAINE DRYWALL, INC. )
                            )
    Plaintiff               )
                            )
    v.                      )          ORDER FOR ENTRY OF
                            )          JUDGMENT ON COUNT
                            )          III AND COUNT V
                            )
PRO CON, INC., et al        )
                            )
    Defendant.              )

## BACKGROUND

This matter came on for trial before the Business and Consumer Court on July 21, 2017. Counts remaining for decision by the Court are Count III (Unjust Enrichment) and Count V (Mechanic's Lien). Plaintiff is represented by Attorney Jon Languet and Pro Con is represented by Attorneys Joseph Talbot and John Hobson. Pro Con entered into a contract to provide design/build services on the construction of the Bangor Residence Inn. Plaintiff Central Maine Drywall ("CMD") performed work on the project under a written subcontract agreement with Pro Con. Pro Con hired another subcontractor, Porter Building Systems ("PBS") to do work on the project as well. CMD later in the project entered into a contract with PBS to complete work that was originally within the scope of work PBS had agreed to perform in its contract with Pro Con.

On January 18, 2017, the Court issued an Order granting Partial Summary Judgment in favor of Pro Con on Count V. CMD had obtained a mechanic's lien against Pro Con in the amount of $175,352.81 on November 17, 2015, but the Court's Order reduced that amount to

1

$15,909.38 because CMD conceded that it had received payment for all but that amount from Pro Con. PBS had paid CMD for work CMD performed on the project at issue in this case, and soon thereafter filed for bankruptcy protection. CMD thus opposed the reduction of the lien amount to $15,909.38, arguing that $73,265.63 of the original lien amount was potentially subject to recovery from the bankruptcy trustee as a "preference" under Section 547 of Title 11 of the United States Code ("Bankruptcy Code"). *See* 11 U.S.C. § 547(b). The Court in its Order on Partial Summary Judgment concluded that there was no evidence in the record that CMD had actually returned any of the $73,265.63 in payments to the bankruptcy trustee. On the same day that the Court issued its Order, CMD voluntarily agreed to pay the bankruptcy trustee $37,500.00 for a release of claims from the trustee related to the alleged avoidable transfers from PBS to CMD. CMD then sent the bankruptcy trustee a check in the amount of $37,500.00 and now seeks to recover that sum from Pro Con, claiming Pro Con has been unjustly enriched in that amount.

Prior to trial, the parties stipulated to judgment on Count I of Plaintiff's Complaint (Breach of Contract and Violation of Prompt Payment Act) and agreed to dismiss Count IV (Quantum Meruit) in accordance with a stipulation signed by both parties. (Joint Pretrial Statement, Stipulated Facts ¶ 27.) No Count II was brought in the Complaint. In the parties' Joint Pretrial Statement the parties agreed that at the time PBS filed for bankruptcy it had paid CMD for all the work CMD had performed with the exception of $15,909.38. At the time of the bankruptcy filing, CMD requested that Pro Con pay that balance. (Joint Pretrial Statement, Stipulated Facts ¶¶ 10-12.) The Court is informed that Pro Con has since paid that amount to CMD. In the Joint Pretrial Statement the parties further agreed that the "only remaining issue for the Court to decide are whether Pro Con is liable to CMD for payment of $37,500.00 under

2

Count III (Unjust Enrichment) or Count V (Mechanic's Lien) of CMD's Complaint." (Joint Pretrial Statement, Factual and Legal Issues in Dispute.)

The parties filed written post-trial arguments, the last of which was received by the Court on August 18, 2017. The Court has reviewed the evidence admitted at trial, along with the parties' written arguments, and issues this Order for Entry of Judgment on Counts III and V in favor of the Defendant.

## FINDINGS AND CONCLUSIONS

The parties agree on a number of facts. (*See* Joint Pretrial Statement, Stipulated Facts.) Pro Con entered into a written contract with BanRes, LLC to provide design/build services and construct the Bangor Residence Inn ("The Project"). (Joint Pretrial Statement, Stipulated Facts ¶ 1.) Pro Con, the general contractor, hired CMD as a subcontractor and entered into a written agreement for installation of cold formed metal framing. (Joint Pretrial Statement, Stipulated Facts ¶ 3.) The original contract between the parties was a fixed price contract for $84,505.00, but the amounts paid to CMD were subject to additions and deductions for changes as agreed in writing, subject to a retainage of 10% of the amount requisitioned by CMD. (Joint Pretrial Statement Stipulated Facts ¶¶ 4-5.) The scope of work performed by CMD was expanded throughout the Project and CMD performed other work for Pro Con on both a fixed price and time and materials basis. (Joint Pretrial Statement, Stipulated Facts ¶ 15.) Invoices for the additional work were sent by CMD to Pro Con for the additional work. (Joint Pretrial Statement, Stipulated Facts ¶ 16.)

The parties also agree that Pro Con hired PBS as a subcontractor on the Project for construction and installation of wood walls, floor and roof trusses, wood stairs, sheathings, air barriers, anchor tie down systems, and installation of windows. (Joint Pretrial Statement,

3

Stipulated Facts ¶ 2.) The written agreement between Pro Con and PBS was a fixed price contract for $960,212.00. (Trial Exh. G.) PBS was paid by Pro Con when PBS submitted monthly payment applications to Pro Con which included representations by PBS regarding the percentage of completion of the PBS Scope of Work. (Trial Exh. S.)

Pro Con paid in full the first four payment applications submitted by PBS based upon the completion percentages represented in the applications. (Trial Exhibits S, O.) The fourth application was for work performed up to December 22, 2014. According to Daniel Messier, Senior Vice President of Pro Con, at the end of December PBS had only completed 60-65% of their Scope of Work even though they represented that the work was 82.66% completed in the fourth application. Mr. Messier testified that he believed PBS had "front loaded" its payment applications to Pro Con which would mean that PBS was paid by Pro Con for work that it had not actually completed.

On December 8, 2014, CMD contracted with PBS to help it complete its scope of work obligations under PBS's contract with Pro Con. According to Kaleb Violette, Project Manager for CMD, in December of 2014 Ken Juthe, Pro Con's Project Manager, contacted Mr. Violette to ask if CMD could provide carpenters to Pro Con on an hourly basis to assist PBS in fulfilling its contract. When PBS became aware that Pro Con intended to use CMD's workers to perform on-site work and back-charge PBS for the cost, Mr. Violette testified that PBS contacted him to ask that CMD provide carpenters directly to PBS. PBS agreed to pay CMD $37.50 per man-hour and CMD was supposed to be paid by PBS within two weeks of the date of billing. (Joint Pretrial Statement, Stipulated Facts ¶ 6.) CMD provided carpenters to PBS from December 9, 2014 until February 26, 2015 when PBS left the Project. Article X ¶ 4 of the contract between Pro Con and PBS prohibited PBS from subcontracting any of its work without written permission of Pro Con.

4

(Trial Exh. G.) The parties seem to agree that Pro Con assented to and supported CMD's agreement with PBS even though no written permission was given by Pro Con to PBS.

Up until February 26, 2015, the date PBS left the job, CMD had been paid according to the terms of their contract with PBS with the exception of $15,909.38 (Trial Exh. B; Joint Pretrial Statement, Stipulated Facts ¶ 11.) Mr. Violette testified that upon receipt of payments from PBS, CMD deposited the funds into its bank account and no liens or encumbrances were placed on the funds.

On March 12, 2015, PBS filed for bankruptcy, and according to Mr. Messier, approximately 20% of PBS's Scope of Work remained unfinished as of that date. Pro Con then asked CMD to complete PBS's Scope of Work, which CMD agreed to do on a time and materials basis. CMD submitted invoices for labor, materials, and equipment to complete the work, which Pro Con approved and incorporated into formal change orders to the CMD Subcontract. (Joint Pretrial Statement, Stipulated Facts ¶14; Trial Exh. R8-10, R13-15, R17-22, R24-31.) Mr. Messier testified that payments on the change orders came to $302,136.31 and that Pro Con had to pay additional sums to other subcontractors, and to material and equipment suppliers, in order to complete work PBS had agreed to do in its scope of work. CMD states in its written arguments that Pro Con paid CMD at most $274,431.34 for work attributable to the Pro Con/PBS subcontract. CMD also asserts there is insufficient evidence in the record to support Pro Con's belief that it had to pay other contractors approximately $450,000.00 over and above the $713,375.00 it had already paid PBS under the contract as of the time PBS left the Project.

On June 10, 2015, CMD received a notice from the bankruptcy trustee that he would be seeking to recover payments made by PBS to CMD during the 90 days prior to the date PBS

5

filed for bankruptcy. In response to the notice, CMD raised the defenses of "subsequent new value" and "ordinary course of business" under § 547(c) of the Bankruptcy Code. (Joint Pretrial Statement, Stipulated Facts ¶ 18.) *See* 11 U.S.C. § 547(c)(2)(4). Ultimately, CMD withdrew those defenses and reached a voluntary agreement with the bankruptcy trustee to pay $37,500.00 to settle the trustee's claim. (See Trial Exh. P.) CMD paid that amount to the Trustee on January 18, 2017. (Joint Pretrial Statement, Stipulated Facts ¶ 24).

The parties also agree on what must be proven in order for the Plaintiff to prevail on a claim for unjust enrichment. A party must prove (1) that it conferred a benefit on the other party; (2) that the other party had "appreciation or knowledge of the benefit;" and (3) that the "acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Howard & Bowie, P.A. v. Collins,* 2000 ME 148, ¶ 13, 759 A.2d 707 (citing *June Roberts Agency v. Venture Properties,* 676 A.2d 46, 49 (Me. 1996)). In addition, the Law Court has held that "the most significant element of the doctrine of [unjust enrichment] is whether the enrichment is unjust." *Howard & Bowie,* 2000 ME 148, ¶ 14, 759 A.2d 707 (citing *Styer v. Hugo,* 422 Pa. Super. 262, 619 A.2d 347, 350 (1993)). Although not an essential element to recovery under an unjust enrichment theory, the Court may consider the defendant's misconduct, or lack thereof, as relevant to the issue of whether the enrichment was unjust. *A.F.A.B Inc. v. Town of Old Orchard Beach,* 610 A.2d 747, 750 (Me. 1992). *See also* Horton & McGehee, *Maine Civil Remedies* §7-5(b) at 179 (4 ed. 2004).

The Law Court has also stated that "the remedy of unjust enrichment describes recovery for the value of the benefit retained *when there is no contractual relationship*, but when on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay." *Nadeau v. Pitman,* 1999 ME 104, ¶14, 731 A.2d 863 (emphasis added). Therefore, the

6

existence of a contractual agreement "precludes recovery on a theory of unjust enrichment." *June Roberts Agency, Inc. v. Venture Properties, Inc.,* 676 A.2d 46, 49 n. 1 (Me. 1996). Substantial Law Court authority repeats this principle. *See, e.g., In re Wage Payment Litig. v. Wal-Mart Stores, Inc.,* 2000 ME 162, ¶ 9, 759 A.2d 217; *Lynch v. Ouelette,* 670 A.2d 948, 950 (Me. 1996); *A.F.A.B. Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 105 n.3 (Me. 1994). *See also* Horton & McGehee, *Maine Civil Remedies* §7-3(a) at 176 (4 ed. 2004).

The Court could find no language from the Law Court explaining this rule, but presumably it is because the aggrieved party's remedy would be in breach of contract and courts should not be responsible for providing a remedy for a party that failed to adequately contract for its own interests. In this case it is undisputed that the parties entered into a written contract that was modified by agreement through change orders, and then ultimately in a separate contract after PBS filed for bankruptcy protection. The Court would note that CMD cannot point to any provision in any of these contracts where Pro Con agreed to protect or indemnify CMD from the kind of loss at issue in this case.[1]

Even if cause could be articulated to create an exception to the general principle in this case, the Court has concluded that any enrichment that may have occurred under these circumstances was not unjust. Pro Con either honored its obligations to CMD under any contract the parties formed, or else has stipulated to imposition of remedies against it in favor CMD for breach of contract and under Maine statutory law. This is not a case where a defendant

---

[1] *In Fed. Ins. Co. v. Me. Yankee Atomic Power Co.,* 183 F. Supp. 2d 76, 84 (D. Me. 2001) the U.S. District Court for the District of Maine provided a caveat to this general principle, stating that "[i]t is reasonable to understand the Law Court's pronouncement, therefore, as stating that a contract covering the *same subject matter* forecloses an unjust enrichment claim" (emphasis added). The contracts between Pro Con and CMD cover the same subject matter, namely the BanRes project. The First Circuit also cautioned against allowing a party to succeed in an "impermissible end run around the voluntary structuring of relationships and their consequences." Id. at 85.

seemingly ignored its obligations to a plaintiff, as in *A.F.A.B. Inc. v. Old Orchard Beach*, 610 A.2d 747 (Me. 1992). In that case, neither the defendant Town nor the stadium owner paid the plaintiff contractor anything for renovations to a ballpark that the Town intended to sell to the stadium once renovations were completed. *Id.* at 749. In the case at bar, CMD was paid significant sums of money, both by PBS before it went bankrupt and by Pro Con. Whatever injustice was experienced by CMD was a direct result of the bankruptcy process and business decisions made by CMD in that process, and was not the result of any conduct or business decisions made by Pro Con.

Because the Court has concluded that this case does not present circumstances where any benefit conferred by CMD or retained by Pro Con was unjust, the Court declines to consider the parties' arguments as to whether Pro Con was actually "enriched" or how to quantify whatever benefit may have been conferred in light of the multiple and substantial payments made by Pro Con to CMD.

The entry will be:

On Count III, Judgment is entered for the Defendant Pro Con on the claim of Unjust Enrichment. On Count V, the findings previously made in the Court's Order granting Partial Summary Judgment to Pro Con on January 18, 2017 are incorporated herein by reference, the Mechanic's Lien claim is denied, and Judgment on Count V is entered for Pro Con. Counsel for CMD may petition the Court for consideration of an award of counsel fees on Count I as previously agreed by the parties in their Stipulated Judgment dated July 21, 2017.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

8

_____  
**DATE**

_____  
**SUPERIOR COURT JUSTICE**  
**BUSINESS AND CONSUMER COURT**

STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, SS.                                   LOCATION: PORTLAND
                                                  DOCKET NO. BCD-CV-16-14

CENTRAL MAINE DRYWALL, INC.,          )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        **ORDER ON DEFENDANT PRO CON,**
                                      )           **INC.'S MOTION FOR PARTIAL**
PRO CON, INC., and                    )             **SUMMARY JUDGMENT**
TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA,                   )
                                      )
        Defendants.                   )
                                      )

Defendant Pro Con, Inc. ("ProCon") moves for partial summary judgment on Count V of

Plaintiff Central Maine Drywall, Inc.'s ("CMD") complaint. For the reasons discussed below,

ProCon's motion is granted.

## I.    BACKGROUND

Defendant ProCon was the general contractor for a project to construct a Residence Inn in

Bangor, Maine (hereafter, the "Project"). (Def. Supp'g S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) On

December 4, 2014, ProCon subcontracted CMD to preform certain work on the Project. (*Id.*)

ProCon and CMD executed a number of change orders expanding the scope of CMD's work on

the Project. (*Id.* ¶ 2.) CMD finished its work and has received payments totaling $820,858.07

from ProCon, which constitutes the total amount owed to CMD under the subcontract and

change orders. (*Id.* ¶ 3.)

ProCon also subcontracted Porter Building Systems, Inc. ("PBS") to perform certain

work on the Project. (*Id.* ¶ 2.) Shortly after CMD began working on the Project, ProCon asked

CMD if it would perform work that had been subcontracted to PBS because PBS was not

fulfilling the terms of its subcontract. (Pl. Add'l S.M.F. ¶ 1; Def. Reply S.M.F. ¶ 1.) When PBS

1

became aware of ProCon's arrangement with CMD, PBS contacted CMD and asked it to perform the work directly for PBS. (*Id.* ¶ 2.) CMD began working on the Project for PBS on December 9, 2014, and continued to do work for PBS until PBS abandoned the Project and filed for Chapter 7 bankruptcy. (*Id.* ¶ 5.)

CMD filed a complaint against ProCon and BanRes, LLC, owner of the Bangor Residence Inn and associated land, on December 18, 2015.[1] CMD's complaint contain claims for breach of contract and violation of the Prompt Payment Statute (Count I), unjust enrichment (Count III), Quantum Meruit (Count IV), and to enforce a mechanic's lien (Count V).[2]

In its complaint, CMD concedes that it received $73,265.63 in payments from PBS for the work it performed on the Project for PBS. (Compl. ¶ 28.) CMD alleges that the total amount presently due from PBS to CMD for its work on the Project is only $15,909.38. (*Id* ¶ 27.) However, CMD asserts that the PBS Bankruptcy Trustee has demanded that CMD return the $73,265.63 in payments to the bankruptcy estate as avoidable transfers under the U.S. Bankruptcy Code, 11 U.S.C. §§ 547(b), 550(b). (*Id.* ¶ 28.) Thus, CMD asserts it is entitled to enforce its mechanic's lien for $89,175.01. (Compl. ¶ 29; Pl. Opp. S.M.F. ¶ 8.)

ProCon moved for partial summary judgment on CMD's mechanic's lien claim on October 19, 2016. ProCon argues that, based on the allegations in complaint, CMD is only owed "at most" $15,909.38 for its work on the Project. (Def. Mot. Summ. J. 5.) ProCon requests that this court "enter partial summary judgment on Count V of CMD's Complaint in favor of ProCon, holding that the amount in controversy for that claim is limited to $15,909.38, plus costs…" (*Id.*)

---

[1] Travelers Casualty and Surety Company of America was substituted for BanRes, LLC as a party defendant on May 6, 2016.

[2] CMD's complaint does not contain a Count II.

2

CMD filed an opposition to partial summary judgment on November 26, 2016. CMD conceded that it has received $73,265.63 from PBS for its work on the Project. (Pl. Opp'n to Def. Mot. Summ. J. 4.) CMD further admitted ProCon's allegation in paragraph 6 of ProCon's Statement of Material Facts, namely that $15,909.38 was the amount that remained unpaid from work it performed as a subcontractor for PBS. (Pl. Opp. S.M.F. ¶ 6). CMD argues, however, that "if" the Bankruptcy Trustee requires it to return $73,265.63 in payments from PBS pursuant to § 547(b) of Bankruptcy Code, it would have the same affect as if CMD had not been paid for its work, entitling it to a mechanic's lien for the amount returned to the Bankruptcy estate. (*Id.* at 5.) Thus, CMD argues that it is entitled to a lien that includes the $73,265.63 in payments claimed by the Bankruptcy Trustee. (*Id.*) ProCon filed a reply on December 2, 2016.

Oral argument was held on January 4, 2017. During oral argument, CMD represented to the court that it had received an offer of compromise from the Bankruptcy Trustee. In addition, on January 18, 2017 CMD advised the Business and Consumer Court that the offer of compromise had been finalized, meaning the Bankruptcy Trustee has agreed to settle all claims regarding the avoidable transfer from PBS in exchange for repayment of $37,500.00 to bankruptcy estate. CMD reiterated its assertion that it is entitled to enforce a mechanic's lien for both the amount that remains unpaid and for any amounts returned to the PBS bankruptcy estate.

## II.  STANDARD OF REVIEW

Either party may move for summary judgment on all or part of a claim. M.R. Civ. P. 56 (a)-(b). Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶

3

14, 951 A.2d 821 (internal citation and quotation marks omitted). A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is also an appropriate devise for winnowing issues and deciding questions of law. *Magno v. Town of Freeport*, 486 A.2d 137, 141 (Me. 1985); *see* 3 Harvey, *Maine Civil Practice* § 56:1 at 218-19 (3d ed. 2011).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. M.R. Civ. P. 56(e); *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021. If the motion is properly supported, the burden then shifts to the non-moving party to respond with specific facts establishing a prima facie case for each element of the claim challenged by the moving party. M.R. Civ. P. 56(e); *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. If the non-moving party fails to present sufficient evidence of the challenged elements, then the moving is entitled to a summary judgment. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. Both the motion and the opposition must be supported by statements of material facts. M.R. Civ. P. 56(h)(1)-(2). Each statement of material fact must be supported by citation to record evidence. M.R. Civ. P. 56(h)(4). The record evidence must be "of a quality that could be admissible at trial." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653. The court may disregard any assertions of fact not properly supported. M.R. Civ. P. 56(h)(4).

## III.   ANALYSIS

Maine's mechanic's lien statute provides that whoever performs or furnishes labor, materials, or equipment used in erecting, altering, moving, or repairing a house building, or appurtenance, or any wharf, pier, or any building thereon, under a contract with or by consent of

4

the owner, "has a lien thereon and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs." 10 M.R.S. § 3251. In order to maintain a lien, a claimant must, within 90 days of ceasing labor or furnishing materials or services, record with the office of the registry of deeds in the county in which the building is situated a true statement of the amount due to the claimant, with all just credits given, and a description of the property intended to be covered by the lien sufficiently accurate to identify the property and the names of the owners, if known. *Id.* § 3253(1)(A). The claimant must also provide a copy of the statement filed with the office of the registry of deeds to the owners by ordinary mail. *Id.* § 3253(1)(B). Any inaccuracy in the statement of the amount due to the claimant will not invalidate the lien, unless it appears that claimant has willfully claimed more than is due. *Id.* § 3254.

To enforce a lien, the claimant must bring a civil action against the debtor, the owner of the property, and all other parties with an interest in the property in the county where the property in located within 120 days after ceasing laboring or furnishing materials or services. *Id.* § 3255(1). Title 10, Section 3258 provides, in relevant part:

> The court shall determine the amount for which each lienor has a lien upon the property by jury trial, if either party so requests in complaint or answer; otherwise in such manner as the court shall direct. Such determination shall be conclusive as to the fact and amount of the lien, subject to appeal as in other actions.

*Id.* § 3258. Thus, the actual amount due to the claimant for which he has a lien is a question of fact for trial. However, the statute also states that this determination can also be made "in such manner as the court shall direct" which could include in the Court's view resolution of part or all of the claim through a summary judgment process. *Platz Assocs. v. Finley,* 2009 ME 55.

CMD admits that it has received complete payment for the work it did on the Project for ProCon, that it received $73,265.63 in payments from PBS for the work it did on the Project for

PBS, and that it is presently claiming that it is owed only $15,909.38 for its work for PBS on the Project. (Pl. Opp. S.M.F. ¶¶ 3, 5-6.) CMD's only argument that it may claim a mechanic's lien for more than $15,909.38 is its assertion that the Bankruptcy Trustee has demanded that it return all or part of the $73,265.63 in payments from PBS as an avoidable transfer under § 547(b) of U.S. Bankruptcy Code. (Pl. Opp'n to Def. Mot. Summ. J. 4-5.) However, there is no evidence in the record that CMD has actually returned any of the $73,265.63 in payments to Bankruptcy Trustee. A mechanic's lien is intended to secure only the amount owed for the furnishing of labor, materials, and services. 10 M.R.S. § 3251. Because CMD has received and retained $73,265.63 in payments from PBS for its work on the Project, CMD is not entitled to enforce a mechanic's lien for the amount those payments. *See* 10 M.R.S. § 3251.

The parties have raised a genuine question of law in this case about whether a claimant can enforce a mechanic's lien for amounts that were paid but later avoided and returned a Bankruptcy estate. However, because no payments from PBS have been returned to the Bankruptcy Trustee, that question is a theoretical one that the court need not decide at this time.

## IV. CONCLUSION

Based on the foregoing, Defendant Pro Con, Inc.'s motion for partial summary judgment on Count V of Plaintiff Central Maine Drywall, Inc.'s complaint is **GRANTED**. Partial Summary Judgment is granted to ProCon based on amounts paid to the Plaintiff, as admitted by the Plaintiff in its filings. Therefore, as to count V of its Complaint, the Mechanic's Lien claim is limited to $15,909.38, plus costs allowable by law.

Pursuant to Maine Rule Civil Procedure 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

6

Dated 7/1/17

/S
**M. Michaela Murphy**
**Justice, Business and Consumer Court**

7

**CENTRAL MAINE DRYWALL, INC.** v.
**PRO CON, INC. and TRAVELERS CASUALTY &**
**SURETY COMPANY OF AMERICA**

**BCD-CV-2016-14**

Central Maine Drywall, Inc.

Jon Languet, Esq.
PO Box 191
Belgrade Lakes, ME 04918

Pro Con, Inc.

Joseph Talbot, Esq.
One Canal Plaza, Suite 900
Portland, ME 04112

Travelers Casualty & Surety Company of
America

John, Hobson, Esq.
One Canal Plaza, Suite 900
Portland, ME 04112